HONDURAS AIRCRAFT REGISTRY, LTD., a Honduran corporation, Honduras Aircraft Registry Bureau, Limited, a Bahamian corporation, Plaintiffs,

v.

The GOVERNMENT OF HONDURAS, and Guillermo Chirinos, Director General of Civil Aeronautics of the Republic of Honduras, individually, Defendants.

No. 94–10060–CIV.

United States District Court,
S.D. Florida.

March 8, 1995.

Alvin Lodish, Miami, FL, for plaintiff.

Donald Blackwell, Miami, FL, for defendant.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Defendants' Motion to Dismiss, filed on De-

cember 1, 1995. After requesting and receiving two extensions of time, Plaintiffs filed a response on February 3, 1995.

## I. Factual Background

On or about June 4, 1992, Defendant Government of Honduras entered into a contract with Plaintiffs Honduras Aircraft Registry and Honduras Air Registry Bureau to set up a system of commercial aircraft registration that would be in compliance with international civil aviation law. The contract was modified and reaffirmed on or about December 16, 1993. Under the terms of said contract, Plaintiffs were to establish an airworthiness system; draft civil aeronautical regulations; develop an aircraft registry database; provide manuals for registered aircraft; keep and maintain records in Florida of all such registered aircraft; effectuate aircraft inspection outside Honduras; promote aircraft registration in Honduras internationally; and provide technical assistance to Honduras' civil aviation authority. Plaintiffs' consideration was the right to inspect commercial aircraft for certification in Honduras and to charge a fee for such service to the aircraft owners. Defendant Government of Honduras ratified the contract by presidential decree on or about April 23, 1992.

On or about August 11, 1994, Defendants Government of Honduras and Guillermo Chirinos invalidated the April 1992 decree. One result of the decree invalidation was the grounding of aircraft, causing damages to Plaintiffs and its clients. Plaintiffs Honduras Aircraft Registry and Honduras Air Registry Bureau thus bring suit for breach of contract, unjust enrichment and tortious interference with a business relationship.

## II. Legal Standard

A motion to dismiss will be granted where it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. "[D]ismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." 5A Wright & Miller, *Federal Practice and Procedure* § 1357; *see also Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir.1986).

For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims," *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## III. Analysis

Defendants move to dismiss the complaint under the act of state doctrine, lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), lack of personal jurisdiction over Defendants and *forum non conveniens.* The Court has reviewed the issues raised and finds that for the reasons set forth below, Defendants' Motion to Dismiss should be denied.

### A. Act of State Doctrine

■ Defendants contend that the act of state doctrine is applicable in the instant case and precludes this Court from judging the validity of a foreign sovereign's public acts. The Court finds this argument to be without merit.

■ Under the act of state doctrine, United States courts generally will refrain from ruling on the validity of a foreign sovereign's acts. *See* Restatement (Third) of Foreign Relations § 443(1). The United States Supreme Court has held that the act of state doctrine reflects "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder" the conduct of foreign affairs. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 423, 84 S.Ct. 923, 938, 11 L.Ed.2d 804 (1964); *see also In re Grand Jury Proceedings Bank of Nova Scotia,* 740 F.2d 817, 831 (11th Cir.1984) ("The act of state doctrine is primarily designed to avoid impingement by the judiciary upon the conduct of foreign policy by the Executive Branch.")

■ However, the doctrine is not without its limitations; it "does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 409, 110 S.Ct. 701, 707, 107 L.Ed.2d 816 (1990). Exceptions to the doctrine include those acts of state that are purely commercial or for which no foreign policy goal of the Executive Branch is impeded. *Id.* at 403–05, 110 S.Ct. at 703–05; *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 707, 96 S.Ct. 1854, 1867, 48 L.Ed.2d 301 (1976).

The Complaint alleges that the parties entered into a contract for the development and maintenance of a comprehensive commercial aircraft registration database and system. Accepting the Complaint's allegations as true and viewing them in the light most favorable to the non-moving party, a contract was executed between Plaintiffs and the Republic of Honduras for the provision of technical assistance. Compl. at ¶¶ 8–18. This is the type of contract private parties enter into in the course of commerce. There is "nothing about [the government's action] (except perhaps its purpose) that is not analogous to a private commercial transaction." *Republic of Argentina v. Weltover,* 504 U.S. 607, 616, 112 S.Ct. 2160, 2167, 119 L.Ed.2d 394 (1992). In light of the foregoing, the Court finds that Defendants' governmental action at the heart of Plaintiffs' allegations is commercial in nature. Thus the act of state doctrine does not apply.

*B. Foreign Sovereign Immunities Act*

■ The Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* ("FSIA") creates a comprehensive framework for determining whether an American court, state or federal, may exercise jurisdiction over a foreign state. Under the Act, a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" unless one of the statute's exceptions applies. 28 U.S.C. § 1604. *See Republic of Argentine v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434–39, 109 S.Ct. 683, 688–91, 102 L.Ed.2d 818 (1989). If none of the exceptions set forth in the FSIA applies, the district court lacks both statutory subject-matter jurisdiction and personal jurisdiction. 28 U.S.C. § 1330(a,b); *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 489 & fn. 14, 103 S.Ct. 1962, 1969 & fn. 14, 76 L.Ed.2d 81 (1983).

■ Under the commercial exception, a foreign state is not immune from suit in any case

in which the action is based upon a commercial activity carried on in the United States by a foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States

28 U.S.C. § 1605(a)(2). Section 1603(d) defines "commercial activity" to mean "either a regular course of commercial conduct or a particular commercial transaction or act." The court determines the commercial character of an activity "by reference to the *nature* of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d) (emphasis added).

Construing the FSIA, the Supreme Court has held that "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Republic of Argentina v. Weltover,* 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992). The relevant inquiry is thus "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* (emphasis in original) (citation omitted). Honduras' motivations in establishing a civil aircraft registry thus are irrelevant to this Court's determination.

The contract at issue in the instant case involves the exchange of goods and services.

The government of Honduras acted as any private actor could in securing goods and services from other private actors. The Court thus finds that Honduras' actions are of the type private parties engage in trade and traffic and are therefore commercial in nature.

Plaintiffs rely on § 1605(a)(2) to establish jurisdiction. The Court's analysis also focuses on whether this action is (1) "based ... upon an act outside the territory of the United States"; (2) that was taken "in connection with a commercial activity" of Honduras outside the U.S.; and (3) that "cause[d] a direct effect in the United States."[1] Presumably, the parties do not contest that the act in question (nullifying the alleged contract) occurred outside the territory of the United States. The dispute thus centers on whether the nullification was taken "in connection with a commercial activity" of Honduras, and whether it had a "direct effect in the United States." The Supreme Court held that "an effect is 'direct' if it follows as an immediate consequence of the defendant's activity." *Id.* at 618, 112 S.Ct. at 2168.

■ Having determined that Honduras' actions in entering the contract with Plaintiffs constitute commercial activity, the Court finds that the nullification of said contract also is "in connection with a commercial activity." The Court also finds that said nullification had a "direct effect in the United States." Specifically, the Complaint alleges, *inter alia,* that the offices and the registry database were to be established and maintained in Monroe County, Florida; that computers and other equipment were to be purchased in the United States under the contract; that Plaintiffs had designated airworthiness representatives in Dade and Broward Counties; and that Plaintiffs had established a network of aircraft inspectors in the United States.

The Complaint further alleges that Defendants' breach of contract caused Plaintiffs to expend substantial sums of money, incur significant costs and charges, suffer injury to their business reputations, and lose substantial income and profits that would have ac-

crued to them in their office in Key Largo, Florida. Compl. at ¶ 32. Under the Supreme Court's interpretation of 1605(a)(2), these allegations, if true, support jurisdiction under the FSIA. The harm alleged follows as an "immediate consequence" of Defendants' activities.

The Court has subject matter jurisdiction over this action under the FSIA.

### C. Personal Jurisdiction

Defendants also move to dismiss the complaint on grounds that the Court lacks personal jurisdiction over the Defendants. However, the Supreme Court has interpreted the FSIA to allow a foreign plaintiff to sue a foreign sovereign in the courts of the United States as long as the substantive requirements of the FSIA are satisfied. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 489–91, 103 S.Ct. 1962, 1969–70, 76 L.Ed.2d 81 (1983).

■ With regard to the constitutional aspects of personal jurisdiction under the FSIA, the Supreme Court applied the *International Shoe [Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ] "minimum contacts" test. *Republic of Argentina v. Weltover,* 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). The Eleventh Circuit has held that a district court should deny a Rule 12(b)(2) motion to dismiss "if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). The plaintiff need only establish that the Complaint's factual allegations constitute a prima facie showing of jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

■ The Complaint contains sufficient allegations to withstand Defendants' motion to dismiss. Specifically, Honduran officials travelled to Miami, Florida to meet with American FAA officials; the bulk of contacts

---

**1.** Neither party disputes that the Republic of Honduras are "foreign states" within the mean-

ing of the FSIA. *See* 28 U.S.C. § 1603 (definitions used in FSIA).

between Plaintiffs and Defendants occurred in the Southern District of Florida; the contract at issue was negotiated in the Southern District of Florida; Defendants had sustained and substantial commercial contacts with Plaintiffs in the United States on matters directly related to the contract; the contract called for performance in the Southern District of Florida; Defendants used the mail and telephone systems to communicate with Plaintiffs in Miami, Florida.

The Court finds that Plaintiffs have established a prima facie case of personal jurisdiction over the Defendants.

### D. Forum Non Conveniens

Defendants move to dismiss on grounds that the Southern District of Florida is a forum non conveniens.

■ A district court has the power to decline to exercise jurisdiction over an action when an adequate, alternative forum is available. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The court must "weigh relative advantages and obstacles to fair trial" in each forum and consider factors of both public and private interest. *Id.* at 508, 67 S.Ct. at 843; *see La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir.1983).

A court gives significant deference to a plaintiff's choice of forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir.1986) ("The plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendants, the plaintiff's choice of forum should not be overturned.")

■ Defendants argue that Honduran courts are an adequate alternative forum for Plaintiff's action because they have jurisdiction over Defendants and because Honduran law permits recovery for breach of contract, unjust enrichment and tortious interference with business relationships. However, Plaintiffs have pointed to legal obstacles that would deny them redress in Honduran court, including unfavorable publicity and threat-

ened use of the Honduran criminal process to intimidate Plaintiffs' officers and witnesses. The Court finds that Defendants have failed to meet the burden of showing that the alternative forum is both actual and adequate.

■ In considering the private interests of litigants, the Supreme Court has directed courts to look at: the relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; enforceability of a judgment if obtained; and relative advantages and obstacles to a fair trial. *Gulf Oil*, 330 U.S. at 501, 67 S.Ct. at 839. Plaintiffs state that the majority of the relevant documentary evidence is in their Key Largo, Florida office. Plaintiffs' principal witnesses reside in South Florida and all of Plaintiffs' Honduran witnesses have expressed willingness to appear.

■ The public interest factors bearing on the forum's interest in entertaining the lawsuit include: court congestion generated from controversies unrelated to the forum; the desirability of having localized controversies decided at home; the difficulties associated with conflict-of-laws and applying foreign law. *Id.* at 508–09, 67 S.Ct. at 843. The controversy is related to the Southern District of Florida in that Plaintiffs' offices and the database at issue are established here, airworthiness representatives and aircraft inspectors were appointed in Dade and Broward Counties. The Court already has before it translations of many of the relevant documents at issue in the instant case. Moreover, the "application of foreign law is not itself a reason to apply the doctrine of *forum non conveniens.*" *Walpex Trading v. Yacimientos Petroliferos*, 712 F.Supp. 383, 393 (S.D.N.Y.1989).

In sum, the Court finds that an adequate, alternative forum does not exist and that the balance of private and public factors weighs in favor of this Court exercising jurisdiction.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss be, and the same is hereby, DENIED. Defendants are hereby directed to file an answer within twenty (20) days from the date hereof.

DONE and ORDERED in chambers at the United States District Courthouse, Federal Justice Building, Miami, Florida, this 8th day of March, 1995.