United States Court of Appeals,

Eleventh Circuit.

Nos. 95-4519, 95-4933.

HONDURAS AIRCRAFT REGISTRY, LTD., a Honduran Corporation, and Honduras Air Registry Bureau, Limited, a Bahamian Corporation, Plaintiffs-Appellees,

Omega Air S De RL, Intervenor-Appellee,

v.

The GOVERNMENT OF HONDURAS, and Guillermo Chirinos, Director General of Civil Aeronautics of the Republic of Honduras, individually, Defendants-Appellants.

Decided Aug. 25, 1997.

As Amended Nov. 17, 1997.

Appeals from the United States District Court for the Southern District of Florida. (No. 94-10060-CV-JLK), James Lawrence King, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and WOOD*, Senior Circuit Judges.

WOOD, Jr., Senior Circuit Judge:

At first glance one may wonder how plaintiffs, a Honduran corporation and its subsidiary, a Bahamian corporation, can bring a suit against the defendants Government of Honduras and Director General Chirinos (collectively, "Honduras") in the Southern District of Florida. In fact, that is the issue we must decide in this case. Honduras filed a motion to dismiss, claiming immunity under the Foreign Sovereign Immunities Act ("FSIA") and on other grounds. The district court denied defendants' motion to dismiss and ordered the case to proceed. *Honduras Aircraft Registry v. Gov't of Honduras,* 883 F.Supp. 685 (S.D.Fla.1995). Honduras appeals.

We have jurisdiction over interlocutory orders denying claims of immunity under the FSIA,

*Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

*see Aldy v. Valmet Paper Machinery,* 74 F.3d 72, 75 (5th Cir.1996). Honduras also asks us to exercise our pendent appellate jurisdiction over the other related claims which arise under the act of state doctrine and the doctrine of forum non conveniens. Plaintiffs object to our exercise of pendent jurisdiction over the forum non conveniens issue. Pendent jurisdiction depends on the exercise of this court's discretion and judicial economy considerations. In determining whether to exercise discretionary pendent jurisdiction we do so with caution. *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines,* 965 F.2d 1375, 1387, 1389 (5th Cir.1992).

## *FACTUAL BACKGROUND*

Because this case comes to us on appeal of the district court's denial of a motion to dismiss, it is appropriate that we construe the complaint in the light most favorable to plaintiffs. We will accept as true the complaint's well pleaded facts, even if disputed, but not its conclusions. *Saudi Arabia v. Nelson,* 507 U.S. 349, 351, 113 S.Ct. 1471, 1474, 123 L.Ed.2d 47 (1993); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984).

Plaintiff Honduras Aircraft Registry, Ltd., is a Honduran subsidiary corporation, fifty-one percent of which is owned by Hondurans. Plaintiff Honduras Aircraft Registry Bureau, Ltd., a Bahamian parent corporation, owns the remainder. The subsidiary company was incorporated in Honduras in May 1992. Two Miami-based businessmen with airline knowledge, one of whom had Honduran contacts, established these two closely related corporations to facilitate negotiating with Honduran officials the contract at issue in this appeal. In general, plaintiff companies' contract proposal was to upgrade and establish a modern civil aeronautics program for Honduras.

The negotiations resulted in a contract on June 4, 1992 entitled "Convention of Technical Assistance Between the Director General of Civil Aeronautics and the Business Honduras Aircraft Registry, Ltd." This contract was modified and reaffirmed by the parties in a separate agreement on

December 16, 1993.  Together, the contract and its amendment provided that the Government of Honduras would upgrade and modernize the Honduran civil aeronautics program to comply with international aviation laws, and that the plaintiff companies would provide goods and services to aid Honduras in achieving this goal.[1]

Specifically, under the June 4, 1992 contract the plaintiff companies agreed to:

Provide a center of computing and adequate installation for the airworthiness section, including computers, photocopiers, telex, typewriters and fax, development of necessary programs for the establishment of the data base with the information related with the aircraft to be inspected and that will be under Honduran registry.  To start, the equipment will be that which is necessary to manage the data of 100 aircraft and must provide additional equipment each time that the necessities of expansion require it.  It is understood that this equipment will be permanently in communication with the principal data base managed in the Offices of the Inspector located in Miami, Florida, USA and will be accessed by modem.[2]

Also under this contract, the plaintiff companies were to provide technical manuals for the different types of aircraft seeking registration, as well as personnel to staff the operation.  They further agreed to publicize and promote the Honduran air registry in the United States and around the world, to involve Honduran government personnel in educational seminars and to provide for additional training.  Plaintiff companies also claim to have drafted the Civil Aeronautics Regulations for Honduras.[3]  The parties left the June 4 contract open ended;  plaintiff companies were to "provide additional equipment each time the necessity of expansion required."

---

[1]Omega Air S de RL is an air carrier intervenor.  In its brief, Omega Air generally supports the position of plaintiffs and claims to be a third party beneficiary of the contract in question.

[2]The "Inspector" is a name given one of the principal officers of one of the plaintiff companies.

[3]Plaintiffs in their brief claim the contract states that the Government of Honduras entered into the contract to "generate foreign currency and a substantial income" for Honduras.  We do not find that provision in the contract itself, but that language does appear in an affidavit by the president of the Registry attached to the complaint which states the generation of fees was in part why the Government of Honduras entered into the Agreement.  This argument is considered later.

In addition to reaffirming the June 4 contract, the December 16, 1993 agreement clarified and amplified some aspects of the original contract. The plaintiff companies agreed to provide Honduras with economic assistance in completing aircraft inspections outside Honduras and establishing cooperative relationships with the United States Federal Aviation Administration (FAA), the International Organization of Civil Aeronautics, and the air authorities of other nations. A location change is not in the contract; however, the parties agreed separately that they would move their data base from Miami to Key Largo, Florida, where plaintiff companies hired four employees. At the heart of this case, though, lies the fact that plaintiff companies claim these two contracts gave them the right to inspect commercial aircraft for certification in Honduras and to charge the aircraft owners a fee for that service.

Under the Chicago Convention of the International Civil Aviation Organization (ICAO), to which Honduras and the United States are both signatories, nations may delegate to private entities the authority to issue Certificates of Airworthiness on behalf of the authorizing government. Those private entities are known as Designated Airworthiness Representatives ("DAR"). In the United States, for example, the FAA authorizes DARs to issue airworthiness certificates and perform maintenance functions on the FAA's behalf. To fulfill the contract at issue here, plaintiff companies recruited DARs in the United States, Kenya, Switzerland, South Africa and the United Kingdom. Plaintiffs also provided the equipment and economic assistance to inspect planes outside Honduras.

In 1994, the leadership of Honduras changed. In August of that year Honduras, without prior notice to plaintiff companies, abrogated the contract. Plaintiff companies then filed this suit against Honduras and individually against Guillermo Chirinos, Director General of Civil Aeronautics of Honduras. The plaintiff companies claim they fully performed under the contract during its existence, but allege that Honduras breached the contract and was unjustly enriched because it did

not pay plaintiffs for the goods and services that they had already furnished under the contract. Plaintiffs also allege that Chirinos tortiously interfered with plaintiffs' business relationships by advising third parties that the aircraft already registered by plaintiffs' efforts were not properly registered and that the contract with plaintiffs was unlawful. The plaintiffs claim this interference caused the grounding of a minimum of twenty aircraft that they had previously processed, and they seek damages in excess of one million dollars.

*DISCUSSION*

We review the denial of appellant's motion to dismiss *de novo* as to the law, *Mutual Assurance Inc. v. United States,* 56 F.3d 1353 (11th Cir.1995), but we apply the clear error standard to any findings of fact. *Brown v. Velmet-Appleton,* 77 F.3d 860 (5th Cir.1996).

A. *The FSIA*

The FSIA regulates subject matter jurisdiction and provides the only basis for courts in this country to acquire jurisdiction over a foreign state. It provides that a foreign state is immune from the jurisdiction of the United States unless an FSIA statutory exemption is applicable. 28 U.S.C. §§ 1604, 1605-7 (1994); *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 610-11, 112 S.Ct. 2160, 2164-65, 119 L.Ed.2d 394 (1992). The only statutory exemption to foreign sovereign immunity at issue in this case is the commercial activity exemption at 28 U.S.C. § 1605(a)(2). It provides that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> .   .   .   .   .
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state;  or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere;  or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

28 U.S.C. § 1605(a)(2). The statute defines a "commercial activity" as:

> [E]ither a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d). Honduras claims the commercial exemption does not apply because plaintiff companies' causes of action are based upon the sovereign acts, not commercial acts, of Honduras. For sovereign acts the defendants presumptively enjoy immunity. *Nelson,* 507 U.S. 349, 359-60, 113 S.Ct. 1471, 1478-79, 123 L.Ed.2d 47. Therefore, Honduras argues, the district court erred in not dismissing plaintiffs' complaint.

The Supreme Court explained the FSIA statutory definition of commercial activity in *Nelson* when it noted that a state engages in commercial activity "where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns. Put differently, a foreign state engages in commercial activity ... only where it acts in the manner of a private player within the market." 507 U.S. 349, 360, 113 S.Ct. 1471, 1479, 123 L.Ed.2d 47 (quotation marks omitted), *citing Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166. Honduras argues that the inspection and registration of aircraft are powers peculiar to sovereigns, as private persons cannot grant airworthiness certificates and register aircraft.

We begin by examining the contract in its context. Honduras had the right to proceed the way it did in modernizing and expanding its civil aviation program. Only Honduras could actually admit aircraft to its registry—that is a part of sovereignty upon which others may not encroach. But this case involves more than the exercise of that sovereign right. Apparently Honduras did not have the resources or the technical expertise to conduct its own aircraft inspections or to set up a registry. Its civil air program needed people with the know-how, ability and the economic resources to establish a data bank, write regulations, train government people, and do and provide the other

things needed to register, inspect and certify aircraft. Honduras therefore ventured into the marketplace to find the expertise and resources needed to accomplish those tasks. All of those underlying activities were commercial in nature and of the type negotiable among private parties. After receiving the plaintiff companies' proposal, Honduras first directed that one of the companies be incorporated in Honduras, and it then contracted with the plaintiffs for certain goods, services, and other economic assistance to support its new civil air program. Contracting with the plaintiff companies was, in context, an easy way for Honduras to not only upgrade and expand its civil air program even outside Honduras, but also to derive a profit in the process. By hiring the plaintiffs, Honduras overcame its own economic and expertise deficiencies. Honduras could have stayed out of the marketplace by keeping this project all under the sovereignty umbrella. It could have explored the possibility of hiring plaintiffs and plaintiffs' personnel as government employees. Instead, however, Honduras exercised its business judgment and contracted in the marketplace with non-government companies to do and supply what it needed. Without plaintiff companies' private help Honduras likely would not have had a new aircraft inspection and certification service.

The foregoing discussion serves only to clarify and put in context why and how the parties came to the contract. The FSIA limits what we may consider in determining whether an activity is commercial in character. Only the "nature" of the act, not the "purpose" or "motivation" for the act, is determinative. For example, in ascertaining whether the FSIA commercial exception applies, it is irrelevant that Honduras may have had a possible profit motive or that Honduras may have intended only to fulfill its unique sovereign objectives. *See Nelson,* 507 U.S. at 359, 113 S.Ct. at 1478-79; *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166.

Within those limitations, therefore, we must determine whether the FSIA commercial exception applies. It is undisputed that a foreign sovereignty is "absolutely immune" from the

jurisdiction of foreign courts for its sovereign and public acts. *See* Restatement (Third) of the Foreign Relations Law of the United States § 451 (1987). A foreign state loses its immunity if it engages in commercial activity, however, because then it is exercising the same powers that a private citizen might exercise. *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166. That is, a foreign state is commercially engaged when it acts like an ordinary private person, not like a sovereign, in the market.

The plaintiff companies state that this is exactly what Honduras did—it entered the marketplace to shop for goods and services in connection with setting up the desired new civil aviation program. Honduras disagrees, and argues that it would be impossible for a private person to contract with another private person to establish a government aircraft registry. Private entrepreneurs could not register aircraft under their own "private flag" as Honduras can under the Honduran flag. It is not disputed that sovereign states have sovereign rights not only over their physical territory, but also in the airspace above. We agree that actually registering aircraft under the Honduras flag is an act peculiar to its sovereignty and cannot fall within the FSIA commercial activity exception. Plaintiffs, however, are not contending that the contract gave them the right to register aircraft, and they are not bringing this lawsuit to obtain that right. Instead, they contracted to provide goods and services to Honduras in connection with its expanded civil air program by inspecting and certifying aircraft airworthiness so that Honduras would be able to appropriately register the aircraft under its flag. They merely seek to enforce that contract.

The complicated part about this particular contract, though, is that it involves both commercial rights and Honduras' sovereign right to register aircraft. If possible, we must attempt to determine if these two distinct rights are separable. Honduras cannot plausibly argue that purchasing such things as office equipment, manuals, training, personnel, promotional and similar

services, and being supplied even financial help, are exclusively sovereign tasks and that Honduras may thus escape its contractual duty to pay for them. Even the caption of the original June 4 contract, as well as its December 16 amendment, acknowledge that the contract was for "technical assistance." Although its terms are not always as clear and specific as could be wished, the agreement does not give plaintiffs the sovereign right to register aircraft under the Honduran flag. It provides only that plaintiffs would provide the means and do the technical work so that Honduras itself could then register the aircraft in accordance with the contract. Any party, sovereign or not, could contract for those goods and services. When Honduras commercially entered the market it did so as a private player to secure certain technical assistance and whatever else it needed to upgrade and expand its civil air program. Honduras did not enter the technical assistance market to regulate that market as a sovereign, but to participate in it as an individual could. The *Weltover* court in making that distinction contrasted a government's regulation of the currency market with a government's contract "to buy army boots or even bullets" for its army which the court labeled commercial activity. *See Weltover* at 614, 112 S.Ct. at 2166. That same distinction applies to the present case.

In *Weltover* the Government of Argentina issued government negotiable bonds which were marketed to private parties as part of a government plan to stabilize Argentina's currency. Later, Argentina unilaterally rescheduled the maturity dates of the bonds when it anticipated it would be unable to financially redeem them. That action had an impact on the bondholders elsewhere, including in the United States. *Id.* at 609-10, 112 S.Ct. at 2164. In determining whether Argentina's action was commercial, the Court did not consider Argentina's reasons or motivation for entering the market. That likely would have immunized the whole transaction as sovereign, because Argentina issued the bonds to try to stabilize the national currency. The Court held, instead, that

it mattered only that Argentina entered the market where it could find the bond buyers it needed. *Id.* at 614, 112 S.Ct. at 2166. That was a commercial, not a sovereign, act because any private person can enter the market. As a result, there was no immunity and the Court allowed the bondholders' suit against Argentina to proceed. *Id.* at 617, 112 S.Ct. at 2167-68. The same analysis applies, then, when the certification and registration of airplanes is involved. Honduras engaged in marketplace activity the same as private persons can and its actions are not protected by immunity.

To support its argument in favor of immunity, Honduras cites various cases which hold that a sovereign's acts are immune. All the cases in this area, however, must turn on their own facts and it is not necessary to try to reconcile them. In *MOL, Inc. v. Peoples Republic of Bangladesh,* 736 F.2d 1326, 1328-29 (9th Cir.1984), for example, the court held that the granting and then the revocation of a license to export monkeys was a sovereign act. It was sovereign, the court explains, because it involved regulating the country's export of its natural resources. The basis of the suit was not the alleged breach of the government contract for the sale of monkeys, but its revocation of the export license. That was part of the sovereign's right to regulate its exports and was therefore immune. That was not a case in which Bangladesh bargained for goods and services in the market and did not pay for them.

In Justice White's concurrence in *Nelson* he cites the testimony of a State Department officer who noted that there is no justification in international law for allowing a foreign state which enters the market as a private party to avoid the costs it incurs and shift the "everyday burdens of the marketplace onto the shoulders of private parties." 507 U.S. 349, 366 n. 2, 113 S.Ct. 1471, 1482 n. 2, 123 L.Ed.2d 47 (White, J. concurring).[4] There is no justification for Honduras to try to shift to

---

[4]This particular statement from the concurrence is not in conflict with the majority opinion as the case turned on its particular facts.

the plaintiffs its ordinary marketplace obligations for the goods and services that plaintiff companies furnished. At a minimum, Honduras would be unjustly enriched as plaintiffs allege in count II of the complaint.

Jurisdiction is properly in the Southern District of Florida. Our observations and holding are only for the purpose of reviewing the denial of the motion to dismiss. We do not intend to prejudge the merits which will have to await trial.

The district court also found that jurisdiction was satisfied under § 1605(a)(2) of the FSIA, based upon an act outside the territory of the United States in connection with commercial activity of Honduras which caused a direct effect in the United States. Those effects can be easily seen; as the district court noted, the offices and registry database were to be established and maintained in Florida, computers and other equipment were to be purchased in the United States, plaintiffs had DARs in Florida and had established a network of aircraft inspectors in the United States. 883 F.Supp. 685, 689. The only arguable aspect of the FSIA jurisdiction requirements is the commercial activity exemption, but that we have just passed on. We agree with the district court's findings, and we therefore affirm the district court on the FSIA issue.

B. *Act of State Doctrine*

Honduras seeks in the alternative to have the case dismissed under the act of state doctrine. Under this doctrine, Honduras argues, the courts of the United States should not pass on the validity of Honduras' alleged decision to terminate registration under the Honduran flag of aircraft processed by plaintiff companies. The act of state doctrine limits, for prudential rather than jurisdictional reasons, the courts in this country from inquiring into the validity of a recognized foreign sovereign's public acts committed within its own territory. *Banco National deCuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964); *Walter Fuller Aircraft Sales v. Rep. of Philippines,*

965 F.2d 1375, 1387 (5th Cir.1992). The doctrine is fully discussed in *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 408, 110 S.Ct. 701, 706, 107 L.Ed.2d 816 (1990), where the Court explains that the policies underlying the doctrine are "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign affairs." *Id.* The Ninth Circuit discussed the application of the doctrine in *Liu v. Republic of China,* 892 F.2d 1419 (9th Cir.1989), and it reiterates that the burden of proving acts of state rests on the party asserting the application of the doctrine. *Id.* at 1432, *citing Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 694-95, 96 S.Ct. 1854, 1861-62, 48 L.Ed.2d 301. Accepting jurisdiction of this issue, our standard of review is different from that applied under the FSIA in the denial of the motion to dismiss. More is involved than accepting what the complaint alleges as true. The act of state doctrine does not limit courts' jurisdiction as the FSIA does, but it is flexibly designed to avoid judicial action in sensitive areas. *Liu,* 892 F.2d at 1431.

The district court found Honduras' act of state doctrine argument to be without merit. The court discussed some of the underlying principles of the doctrine, but its reason for finding the doctrine inapplicable appears to be that this case involves a perceived commercial exception to the doctrine as under the FSIA. However, there is no commercial exception to the act of state doctrine as there is under the FSIA. The factors to be considered, as recited in *Kirkpatrick,* may sometimes overlap with the FSIA commercial exception, but a commercial exception alone is not enough. The district court may have been correct in holding the doctrine was no bar to this case, but whatever the result may be it must be reached only after consideration of the pertinent factors. On this issue, therefore, we must vacate the result reached and remand to the district court for further consideration under the controlling factors mentioned above.

C. *Forum Non Conveniens*

After considering some of the various criteria, the district court determined that the Southern District of Florida was not a forum non conveniens for this case. *Walter Fuller,* a case which also involves the FSIA and the act of state doctrine, sets forth and discusses the factors to be considered when determining whether a particular forum is a forum non conveniens, including "the threshold question whether there exists an alternative forum." 965 F.2d at 1389. In our judgment the Fifth Circuit wisely concluded that it was "inappropriate to reach out and decide the forum non conveniens issue in a case in which [its] appellate jurisdiction is carefully defined by concerns about enforcing the immunity of foreign sovereigns from litigation." *Id.* at 1390. The issue of forum non conveniens is "not closely related to the considerations involved in reviewing decisions concerning either sovereign immunity or the act of state doctrine." *Id.* at 1389. We agree, and decline at this time to exercise our pendent jurisdiction. The appeal of Honduras with respect to this issue is dismissed without prejudice.

## *CONCLUSION*

The district court's decision as to the application of the FSIA is AFFIRMED, as to the act of state doctrine it is VACATED and REMANDED for further consideration, and the appeal as to forum non conveniens is DISMISSED without prejudice.