# W. S. KIRKPATRICK & CO., INC., ET AL. v. ENVIRON-<br>MENTAL TECTONICS CORP., INTERNATIONAL

No. 87–2066.   Argued November 27, 1989—Decided January 17, 1990

SCALIA, J., delivered the opinion for a unanimous Court.

*Edward Brodsky* argued the cause for petitioners. With him on the briefs was *Sarah S. Gold.*

*Thomas B. Rutter* argued the cause and filed a brief for respondent.

*Deputy Solicitor General Merrill* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General Schiffer, Edwin S. Kneedler, Michael Jay Singer, John P. Schnitker*, and *Abraham D. Sofaer.**

JUSTICE SCALIA delivered the opinion of the Court.

In this case we must decide whether the act of state doctrine bars a court in the United States from entertaining a cause of action that does not rest upon the asserted invalidity of an official act of a foreign sovereign, but that does require imputing to foreign officials an unlawful motivation (the obtaining of bribes) in the performance of such an official act.

## I

The facts as alleged in respondent's complaint are as follows: In 1981, Harry Carpenter, who was then chairman of the board and chief executive officer of petitioner W. S. Kirkpatrick & Co., Inc. (Kirkpatrick), learned that the Republic of Nigeria was interested in contracting for the construction and equipment of an aeromedical center at Kaduna Air Force Base in Nigeria. He made arrangements with Benson "Tunde" Akindele, a Nigerian citizen, whereby

---

*Briefs of *amici curiae* were filed for the Republic of China by *Daniel K. Mayers, David Westin*, and *Gary B. Born;* and for the American Bar Association by *L. Stanley Chauvin, Jr., Michael D. Sandler*, and *Roger B. Coven.*

Akindele would endeavor to secure the contract for Kirkpatrick. It was agreed that, in the event the contract was awarded to Kirkpatrick, Kirkpatrick would pay to two Panamanian entities controlled by Akindele a "commission" equal to 20% of the contract price, which would in turn be given as a bribe to officials of the Nigerian Government. In accordance with this plan, the contract was awarded to petitioner W. S. Kirkpatrick & Co., International (Kirkpatrick International), a wholly owned subsidiary of Kirkpatrick; Kirkpatrick paid the promised "commission" to the appointed Panamanian entities; and those funds were disbursed as bribes. All parties agree that Nigerian law prohibits both the payment and the receipt of bribes in connection with the award of a government contract.

Respondent Environmental Tectonics Corporation, International, an unsuccessful bidder for the Kaduna contract, learned of the 20% "commission" and brought the matter to the attention of the Nigerian Air Force and the United States Embassy in Lagos. Following an investigation by the Federal Bureau of Investigation, the United States Attorney for the District of New Jersey brought charges against both Kirkpatrick and Carpenter for violations of the Foreign Corrupt Practices Act of 1977, 91 Stat. 1495, as amended, 15 U. S. C. § 78dd–1 et seq., and both pleaded guilty.

Respondent then brought this civil action in the United States District Court for the District of New Jersey against Carpenter, Akindele, petitioners, and others, seeking damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U. S. C. § 1961 et seq., the Robinson-Patman Act, 49 Stat. 1526, 15 U. S. C. § 13 et seq., and the New Jersey Anti-Racketeering Act, N. J. Stat. Ann. § 2C:41–2 et seq. (West 1982). The defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the action was barred by the act of state doctrine.

The District Court, having requested and received a letter expressing the views of the legal adviser to the United States Department of State as to the applicability of the act of state doctrine, treated the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and granted the motion. 659 F. Supp. 1381 (1987). The District Court concluded that the act of state doctrine applies "if the inquiry presented for judicial determination includes the motivation of a sovereign act which would result in embarrassment to the sovereign or constitute interference in the conduct of foreign policy of the United States." *Id.*, at 1392–1393 (citing *Clayco Petroleum Corp.* v. *Occidental Petroleum Corp.*, 712 F. 2d 404, 407 (CA9 1983)). Applying that principle to the facts at hand, the court held that respondent's suit had to be dismissed because in order to prevail respondent would have to show that "the defendants or certain of them intended to wrongfully influence the decision to award the Nigerian Contract by payment of a bribe, that the Government of Nigeria, its officials or other representatives knew of the offered consideration for awarding the Nigerian Contract to Kirkpatrick, that the bribe was actually received or anticipated and that 'but for' the payment or anticipation of the payment of the bribe, ETC would have been awarded the Nigerian Contract." 659 F. Supp., at 1393 (footnote omitted).

The Court of Appeals for the Third Circuit reversed. 847 F. 2d 1052 (1988). Although agreeing with the District Court that "the award of a military procurement contract can be, in certain circumstances, a sufficiently formal expression of a government's public interests to trigger application" of the act of state doctrine, *id.*, at 1058, it found application of the doctrine unwarranted on the facts of this case. The Court of Appeals found particularly persuasive the letter to the District Court from the legal adviser to the Department of State, which had stated that in the opinion of the Department judicial inquiry into the purpose behind the act of a for-

eign sovereign would not produce the "unique embarrassment, and the particular interference with the conduct of foreign affairs, that may result from the judicial determination that a foreign sovereign's acts are invalid." *Id.*, at 1061. The Court of Appeals acknowledged that "the Department's legal conclusions as to the reach of the act of state doctrine are not controlling on the courts," but concluded that "the Department's factual assessment of whether fulfillment of its responsibilities will be prejudiced by the course of civil litigation is entitled to substantial respect." *Id.*, at 1062. In light of the Department's view that the interests of the Executive Branch would not be harmed by prosecution of the action, the Court of Appeals held that Kirkpatrick had not met its burden of showing that the case should not go forward; accordingly, it reversed the judgment of the District Court and remanded the case for trial. *Id.*, at 1067. We granted certiorari, 492 U. S. 905 (1989).

## II

This Court's description of the jurisprudential foundation for the act of state doctrine has undergone some evolution over the years. We once viewed the doctrine as an expression of international law, resting upon "the highest considerations of international comity and expediency," *Oetjen* v. *Central Leather Co.*, 246 U. S. 297, 303–304 (1918). We have more recently described it, however, as a consequence of domestic separation of powers, reflecting "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder" the conduct of foreign affairs, *Banco Nacional de Cuba* v. *Sabbatino*, 376 U. S. 398, 423 (1964). Some Justices have suggested possible exceptions to application of the doctrine, where one or both of the foregoing policies would seemingly not be served: an exception, for example, for acts of state that consist of commercial transactions, since neither modern international comity nor the current position of our Execu-

tive Branch accorded sovereign immunity to such acts, see *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U. S. 682, 695–706 (1976) (opinion of WHITE, J.); or an exception for cases in which the Executive Branch has represented that it has no objection to denying validity to the foreign sovereign act, since then the courts would be impeding no foreign policy goals, see *First National City Bank* v. *Banco Nacional de Cuba*, 406 U. S. 759, 768–770 (1972) (opinion of REHNQUIST, J.).

The parties have argued at length about the applicability of these possible exceptions, and, more generally, about whether the purpose of the act of state doctrine would be furthered by its application in this case. We find it unnecessary, however, to pursue those inquiries, since the factual predicate for application of the act of state doctrine does not exist. Nothing in the present suit requires the Court to declare invalid, and thus ineffective as "a rule of decision for the courts of this country," *Ricaud* v. *American Metal Co.*, 246 U. S. 304, 310 (1918), the official act of a foreign sovereign.

In every case in which we have held the act of state doctrine applicable, the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory. In *Underhill* v. *Hernandez*, 168 U. S. 250, 254 (1897), holding the defendant's detention of the plaintiff to be tortious would have required denying legal effect to "acts of a military commander representing the authority of the revolutionary party as government, which afterwards succeeded and was recognized by the United States." In *Oetjen* v. *Central Leather Co.*, *supra*, and in *Ricaud* v. *American Metal Co.*, *supra*, denying title to the party who claimed through purchase from Mexico would have required declaring that government's prior seizure of the property, within its own territory, legally ineffective. See *Oetjen, supra*, at 304; *Ricaud, supra*, at 310. In *Sabbatino*,

upholding the defendant's claim to the funds would have required a holding that Cuba's expropriation of goods located in Havana was null and void. In the present case, by contrast, neither the claim nor any asserted defense requires a determination that Nigeria's contract with Kirkpatrick International was, or was not, effective.

Petitioners point out, however, that the facts necessary to establish respondent's claim will also establish that the contract was unlawful. Specifically, they note that in order to prevail respondent must prove that petitioner Kirkpatrick made, and Nigerian officials received, payments that violate Nigerian law, which would, they assert, support a finding that the contract is invalid under Nigerian law. Assuming that to be true, it still does not suffice. The act of state doctrine is not some vague doctrine of abstention but a *"principle of decision* binding on federal and state courts alike." *Sabbatino, supra,* at 427 (emphasis added). As we said in *Ricaud,* "the act within its own boundaries of one sovereign State . . . becomes . . . a rule of decision for the courts of this country." 246 U. S., at 310. Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine. That is the situation here. Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires. Cf. *Sharon* v. *Time, Inc.,* 599 F. Supp. 538, 546 (SDNY 1984) ("The issue in this litigation is not whether [the alleged] acts are valid, but whether they occurred").

In support of their position that the act of state doctrine bars any factual findings that may cast doubt upon the validity of foreign sovereign acts, petitioners cite Justice Holmes' opinion for the Court in *American Banana Co.* v. *United*

*Fruit Co.*, 213 U. S. 347 (1909). That was a suit under the United States antitrust laws, alleging that Costa Rica's seizure of the plaintiff's property had been induced by an unlawful conspiracy. In the course of a lengthy opinion Justice Holmes observed, citing *Underhill*, that "a seizure by a state is not a thing that can be complained of elsewhere in the courts." 213 U. S., at 357–358. The statement is concededly puzzling. *Underhill* does indeed stand for the proposition that a seizure by a state cannot be complained of elsewhere—in the sense of being sought to be declared *ineffective* elsewhere. The plaintiff in *American Banana*, however, like the plaintiff here, was not trying to undo or disregard the governmental action, but only to obtain damages from private parties who had procured it. Arguably, then, the statement did imply that suit would not lie if a foreign state's actions would be, though not invalidated, impugned.

Whatever Justice Holmes may have had in mind, his statement lends inadequate support to petitioners' position here, for two reasons. First, it was a brief aside, entirely unnecessary to the decision. *American Banana* was squarely decided on the ground (later substantially overruled, see *Continental Ore Co.* v. *Union Carbide & Carbon Corp.*, 370 U. S. 690, 704–705 (1962)) that the antitrust laws had no extraterritorial application, so that "what the defendant did in Panama or Costa Rica is not within the scope of the statute." 213 U. S., at 357. Second, whatever support the dictum might provide for petitioners' position is more than overcome by our later holding in *United States* v. *Sisal Sales Corp.*, 274 U. S. 268 (1927). There we held that, *American Banana* notwithstanding, the defendant's actions in obtaining Mexico's enactment of "discriminating legislation" could form part of the basis for suit under the United States antitrust laws. 274 U. S., at 276. Simply put, *American Banana* was not

an act of state case; and whatever it said by way of dictum that might be relevant to the present case has not survived *Sisal Sales*.

Petitioners insist, however, that the policies underlying our act of state cases—international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations—are implicated in the present case because, as the District Court found, a determination that Nigerian officials demanded and accepted a bribe "would impugn or question the nobility of a foreign nation's motivations," and would "result in embarrassment to the sovereign or constitute interference in the conduct of foreign policy of the United States." 659 F. Supp., at 1392–1393. The United States, as *amicus curiae*, favors the same approach to the act of state doctrine, though disagreeing with petitioners as to the outcome it produces in the present case. We should not, the United States urges, "attach dispositive significance to the fact that this suit involves only the 'motivation' for, rather than the 'validity' of, a foreign sovereign act," Brief for United States as *Amicus Curiae* 37, and should eschew "any rigid formula for the resolution of act of state cases generally," *id.*, at 9. In some future case, perhaps, "litigation . . . based on alleged corruption in the award of contracts or other commercially oriented activities of foreign governments could sufficiently touch on 'national nerves' that the act of state doctrine or related principles of abstention would appropriately be found to bar the suit," *id.*, at 40 (quoting *Sabbatino*, 376 U. S., at 428), and we should therefore resolve this case on the narrowest possible ground, viz., that the letter from the legal adviser to the District Court gives sufficient indication that, "in the setting of this case," the act of state doctrine poses no bar to adjudication, *ibid.**

---

*Even if we agreed with the Government's fundamental approach, we would question its characterization of the legal adviser's letter as reflecting the absence of any policy objection to the adjudication. The letter, which

These urgings are deceptively similar to what we said in *Sabbatino*, where we observed that sometimes, even though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application. We suggested that a sort of balancing approach could be applied — the balance shifting against application of the doctrine, for example, if the government that committed the "challenged act of state" is no longer in existence. 376 U. S., at 428. But what is appropriate in order to avoid unquestioning judicial acceptance of the acts of foreign sovereigns is not similarly appropriate for the quite opposite purpose of expanding judicial incapacities where such acts are not directly (or even indirectly) involved. It is one thing to suggest, as we have, that the policies underlying the act of state doctrine should be considered in deciding whether, despite the doctrine's technical availability, it should nonetheless not be invoked; it is something quite different to suggest that those underlying policies are a doctrine unto themselves, justifying expansion of the act of state doctrine (or, as the United States puts it, unspecified "related principles of abstention") into new and uncharted fields.

The short of the matter is this: Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them. The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid. That doctrine has no application to the

---

is reprinted as an appendix to the opinion of the Court of Appeals, see 847 F. 2d 1052, 1067–1069 (CA3 1988), did not purport to say whether the State Department would like the suit to proceed, but rather responded (correctly, as we hold today) to the question whether the act of state doctrine was applicable.

present case because the validity of no foreign sovereign act is at issue.

The judgment of the Court of Appeals for the Third Circuit is affirmed.

*It is so ordered.*