19 F.3d 1439
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re AMCOR INVESTMENTS CORPORATION, f/k/a Continental Homes
Corporation, a California Corporation.
SOCIETE D'ANALYSES ET D'ETUDES BRETONNEAU, f/k/a Societe De
Banque Privee, f/k/a Saudi European Bank, S.A.,
Plaintiffs-Appellants,
v.
AMCOR INVESTMENTS CORPORATION, f/k/a Continental Homes
Corporation, a California corporation, and Gascon
Development, Inc., a California
corporation, Defendants-Appellants.
 No. 92-17020.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1994.
Decided March 15, 1994.
 
 1
 Before: FERNANDEZ and ALARCON, Circuit Judges, and HILL, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Societe d'Analyses et d'Etudes Bretonneau (Bretonneau), a foreign bank, appeals the district court's grant of summary judgment in favor of defendant AMCOR Investments Corporation arising out of a letter of credit dispute. We affirm.
 
 
 4
 The letter of credit was issued pursuant to an Application for Standby Letter of Credit which was signed by Gascon Development, Inc. It was issued by the New York agency of the Saudi European Bank and was payable "at sight on Saudi European Bank S.A. New York, New York effective June 30, 1988 and expiring at our counters at 3:00 P.M. on June 30, 1990."
 
 
 5
 AMCOR presented a sight draft on the letter of credit in the amount of $2.2 million to Bretonneau on March 23, 1990, along with a certified statement required by the letter of credit indicating that: "This drawing represents a monetary default under the $2,000,000 down payment Note dated June 30, 1988 made by Gascon Development, Inc. in favor of AMCOR Investments Corporation." On March 26, 1990, Gascon advised Bretonneau that "material misrepresentations and failure to disclose material facts may have occurred in the real estate transaction whereby [Gascon] acquired the Estrella property." Bretonneau then filed its adversary complaint in this action, claiming that although it was ready, willing, and able to pay AMCOR under the letter of credit, it was at risk to Gascon if it did so.
 
 
 6
 AMCOR sought summary judgment on the claims in Bretonneau's adversary complaint, its own counterclaim, and a cross-claim filed against it by Gascon. On October 28, 1992, the district court granted AMCOR's motion in its entirety. This appeal followed. Bretonneau asserts that payment of the letter of credit was barred by the act of state doctrine.
 
 
 7
 Under the act of state doctrine, "courts will not examine the validity of acts of foreign states--even if in conflict with our notions of justice--if those acts are executed within the foreign state's territory." Tchacosh Co. v. Rockwell Int'l Corp., 766 F.2d 1333, 1335-36 (9th Cir.1985). The doctrine "prohibits [a] U.S. court [ ] from reaching the merits of an issue--even though [it] otherwise ha[s] jurisdiction--in order to avoid embarrassment of foreign governments in politically sensitive matters and interference with the conduct of our own foreign policy." West v. Multibanco Comermex, S.A., 807 F.2d 820, 827 (9th Cir.), cert. denied, 482 U.S. 906, 107 S.Ct. 2483, 96 L.Ed.2d 375 (1987). The doctrine is a prudential one "compelled by neither international law nor the Constitution." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 427, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964).
 
 
 8
 The doctrine does not apply unless (1) a court is required "to judge the validity of the public acts of a sovereign state," (2) "performed within its own territory," Callejo v. Bancomer, S.A., 764 F.2d 1101, 1113 (5th Cir.1985); (3) in order "to give effect to [the foreign state's] public interests." Timberlane Lumber Co. v. Bank of America, N.T. & S.A., 549 F.2d 597, 607 (9th Cir.1976). "The crucial element in determining whether deference should be accorded in any given case" under the act of state doctrine is "the potential for interference with our foreign relations." Id. Since Bretonneau invokes the doctrine as an affirmative defense, it bears the burden of proving the doctrine's applicability. See Alfred Dunhill of London, Inc. v. Cuba, 425 U.S. 682, 694, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1975).
 
 
 9
 "Act of state issues only arise when a court must decide --that is, when the outcome of a case turns upon--the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine. That is the situation here." W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp. Int'l, 493 U.S. 400, 409-10, 110 S.Ct. 701, 705, 107 L.Ed.2d 816 (1990) (emphasis in original). Although "[a]cts of business [may] become effectively acts of the sovereign" where "corporate conduct ... is compelled by a foreign sovereign" and the corporations "have no choice but to obey" the sovereign's order, that is not the case here. Timberlane, 549 F.2d at 606 (internal quotations omitted).
 
 
 10
 Bretonneau argues that the "act of business," i.e., the sale under terms which it contends expunged its debt to AMCOR, constitutes an "act of state" because the French government compelled the sale. To succeed on this basis, however, Bretonneau must prove not only that the French government generally compelled the sale, but that it compelled the terms of the sale--particularly those purportedly eradicating Bretonneau's obligation to AMCOR. This it cannot do.
 
 
 11
 At most the evidence shows that the Bank of France facilitated the sale of Bretonneau once the Bouyges Group indicated its interest in purchasing Bretonneau. The evidence does not indicate that the French banking authority forced Bretonneau to sell to Bouyges or anyone else under terms which would eradicate payment to AMCOR. Rather, it was the negotiations between two private parties, Bouyges and Bretonneau, which created the purchase agreement and its terms. Since the Bank of France neither ordered the sale to Bouyges nor compelled the terms pursuant to which it was consummated, no "act of state" exists to preclude payment to AMCOR.
 
 
 12
 In any event, the exclusion of "certain loans granted to borrowers connected to former stockholders" of Bretonneau from the 1989 sale of Bretonneau, simply did not encompass the letter of credit at issue here. The summary of the purchase agreement indicates that what was excluded was "loans, credits or guarantees to 6 clients" who were "former clients of the bank," "of Middle East origin or heavily involved in the shipping business," and "totally unrelated to the US and more specifically to ACC, LINCOLN or KEATING." A letter of credit does not constitute a loan, credit or guarantee of the bank for which the bank can expect repayment; instead, it is an obligation which the bank itself must pay to an individual designated by its client. FDIC v. Bank of San Francisco, 817 F.2d 1395, 1398-99 (9th Cir.1987). Moreover, the debts to which the exclusion refers are "totally unrelated to the US" and "ACC, LINCOLN or KEATING."
 
 
 13
 In short, we have reviewed the evidence in this case and found nothing that even hints at a whisper of support for the theory that the French government has decreed nonpayment of the letter of credit.[1]
 
 CONCLUSION
 
 14
 Letters of credit are exceedingly important instruments of commerce. They induce beneficiaries to part with property or services in reliance on the solvency and honesty of banks. Yet Bretonneau, after first indicating that it was ready, willing, and able to pay on this letter of credit, has tried to renege by hiding behind the act of state doctrine. We, like the district court, hold that it cannot do so.
 
 
 15
 AMCOR's request for attorneys' fees incurred in defending Bretonneau's appeal is granted. The case is remanded for a determination of the amount of the appellate fee award.
 
 
 16
 AFFIRMED, and REMANDED for fee determination.
 
 
 
 *
 The Honorable Irving Hill, Senior United States District Judge, United States District Court for the Central District of California, siting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We have also carefully considered Bretonneau's various complaints about authentication and the like, and find them to be hollow at best. Given its own complaint and its own admissions it cannot seriously assert that payment of the letter of credit was improperly demanded, or that letters written on its own stationery by its own officers constitute inadmissible hearsay. Any of the other evidence to which the bank objects is irrelevant to the issues on appeal