FOR PUBLICATION
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

In re: PHILIPPINE NATIONAL BANK,

PHILIPPINE NATIONAL BANK,
Petitioner,

v.

UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF

HAWAII,

Respondent,

MAXIMO HILAO; ESTATE OF
FERDINAND MARCOS; IMELDA R.
MARCOS; FERDINAND R. MARCOS,
JR.,
Real Parties in Interest.

No. 04-71843

D.C. No.

MDL-00840-MLR

OPINION

Petition for Writ of Mandamus to the
United States District Court for the
District of Hawaii

Argued and Submitted
June 16, 2004--San Francisco, California

Filed February 4, 2005

Before: Alfred T. Goodwin, William C. Canby, Jr., and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Canby

1563

1564

1565

## COUNSEL

Jay R. Ziegler, Buchalter, Nemer, Fields & Younger, Los Angeles, California, for the petitioner.

Robert A. Swift, Kohn, Swift & Graf, PC, Philadelphia, Pennsylvania; John J. Bartko, William I. Edlund, Bartko, Zankel, Tarrant & Miller, San Francisco, California; for real parties in interest.

---

## OPINION

CANBY, Circuit Judge:

The Philippine National Bank petitions this court for a writ of mandamus to prevent the district court from pursuing contempt and discovery proceedings against the Bank because of the Bank's transfer of funds to the Republic of the Philippines pursuant to a judgment of the Philippine Supreme Court.[1] We conclude that the district court's orders violated the act of state doctrine, and we accordingly issue the writ.

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1651(a).

1566

BACKGROUND

This mandamus petition represents one more chapter in a long-running dispute over the right to the assets of the estate of former Philippine President Ferdinand E. Marcos. On one side is a class of plaintiffs who obtained a large judgment in the federal district court in Hawaii against the Marcos estate for human rights violations by the Marcos regime. The judgment included an injunction restraining the estate and its agents or aiders and abettors from transferring any of the estate's assets.[2] On the other side is the Republic of the Philippines, which independently has sought forfeiture of the Marcos estate's assets on the ground that they were stolen by Marcos from the Philippine government and its people.

In an earlier case, we dealt with the attempt of class plaintiffs to reach assets of the Marcos estate located in Swiss banks. Credit Suisse v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 130 F.3d 1342, 1347-48 (9th Cir. 1997). The Swiss assets had been frozen by the Swiss government at the request of the Republic, which was seeking to recover them. The class plaintiffs obtained an injunction from the district court requiring the Swiss banks to hold the assets for the benefit of the class plaintiffs. We held that the injunction violated the act of state doctrine, which precludes our courts from declaring "invalid" a foreign sovereign's official act -- in this case the freeze order of the Swiss government. Id. We accordingly granted a writ of mandamus directing dismissal of the district court's order, and ordering the district court:

---

[2] The district court's injunction included a finding of fact that the Republic of the Philippines, which was not a party to the litigation, was an agent or aider and abettor of the Estate. On appeal by the Republic, we vacated the injunction to the extent that it purported to restrain the Republic, because sovereign immunity precluded district court jurisdiction over the Republic. In re Estate of Ferdinand Marcos Human Rights Litig., 94 F.3d 539, 548 (9th Cir. 1996).

> to refrain from taking any further action in [this] action or any other case involving any or all of the [class plaintiffs] and any assets of the Estate of Ferdinand E. Marcos held or claimed to be held by the Banks.

Id. at 1348.**3**

Thereafter, the Swiss government released the funds frozen in Switzerland for transfer to the Philippine National Bank in escrow pending a determination of proper disposal by a competent court in the Philippines. The Philippine National Bank deposited the funds in Singapore. The Philippine Supreme Court subsequently held that the assets were forfeited to the Republic of the Philippines.

The district court then issued the orders that precipitated the present petition for mandamus. The district court ruled that the Philippine Supreme Court had violated "due process by any standard" and that its judgment was entitled to no deference. It ordered reinstatement of an earlier settlement agreement in the district court litigation that had been rejected when the Philippine courts refused to approve it and the Republic failed to give its consent to the agreement.**4** The district court further stated in an Order Directing Compliance:

> The Court's Special Master has brought to the

---

**3** We subsequently clarified that the mandate did not preclude the district court from participating in settlement discussions or otherwise performing its duties under Fed. R. Civ. P. 23, "so long as such duties do not involve an attempt to reach Marcos assets held or claimed to be held by the [Swiss] banks . . . ." Unpub. Order, No. 97-70193 (9th Cir. Dec. 23, 1997).
**4** The Republic of the Philippines appealed the order reinstating the settlement and the Order Directing Compliance, but we dismissed the appeal on the ground that the Republic lacked standing because it was neither a party to the litigation nor a person or banking institution bound by the Order Directing Compliance. Hilao v. Estate of Marcos, _____ F.3d _____, 2004 WL 2985245 (9th Cir. Dec. 28, 2004).

1568

Court's attention that there is an imminent threat that the monies transferred from Swiss banks to Singapore, pursuant to a "certain escrow agreement[,"] may be released by the banking officials pursuant to claims filed by the Philippine Commission on Good Government.

\* \* \*

IT IS HEREBY ORDERED that any such transfer, without first appearing and showing cause in this court as to how such transfer might occur without violating the Court's injunction shall be considered contempt of the Court's earlier order. Any and all persons and banking institutions participating in such transfers . . . are hereby notified that such transfer would be considered in contempt of this Court's injunction[.]

The district court then issued an Order to Show Cause against the Philippine Bank, which was not a party to the litigation in the district court, requiring the Bank to show why it should not be held in contempt for violating the court's injunction against transfer of assets by the estate. A hearing on the Order to Show Cause was held, but not concluded because the district court ruled that a Bank officer's declaration could not be considered unless the officer was deposed. The district court set a time and place for the deposition.

The Bank then filed the present petition for mandamus in this court, seeking to restrain the district court from enforcing its Order to Show Cause and from pursuing discovery against the Bank officer. The Bank asserts that it has transferred nearly all of the funds in issue to the Republic pursuant to the judgment of the Philippine courts.[5] The Bank contends that

---

[5] Certain of the funds held in another bank in Singapore were not transferred because the bank refused to release the funds and instead filed an interpleader action in Singapore.

1569

the officer's deposition would violate Philippine bank secrecy laws. More important, the Bank contends that the entire proceeding against the Bank for its transfer of funds violated the act of state doctrine. We stayed the proceedings in district court pending our ruling on the mandamus petition.

DISCUSSION

1. The act of state doctrine.

> [1] Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

Underhill v. Hernandez, 168 U.S. 250, 252 (1897). The act of state doctrine originally was deemed to arise from international law, but more recently has been viewed as a function of our constitutional separation of powers. W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 404 (1990). So viewed, the doctrine reflects " `the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." Id. (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423 (1964)).

The district court's orders in issue violated this principle. In order to obtain assets from the Philippine Bank, or to hold the Bank in contempt for the transfer of those assets to the Republic, the district court necessarily (and expressly) held invalid the forfeiture judgment of the Philippine Supreme Court. We conclude that this action of the district court violated the act of state doctrine.

1570

The class plaintiffs in the district court argue that the act of state doctrine is directed at the executive and legislative branches of foreign governments, and does not apply to judicial decisions. Although the act of state doctrine is normally inapplicable to court judgments arising from private litigation, there is no inflexible rule preventing a judgment sought by a foreign government from qualifying as an act of state. See Liu v. Republic of China, 892 F.2d 1419, 1433-34 & n.2 (9th Cir. 1989) (citing RESTATEMENT (SECOND) OF FOREIGN RELATIONS OF THE UNITED STATES § 41 cmt. d (1965)) ("A judgment of a court may be an act of state."). There is no question that the judgment of the Philippine Supreme Court gave effect to the public interest of the Philippine government. The forfeiture action was not a mere dispute between private parties; it was an action initiated by the Philippine government pursuant to its "statutory mandate to recover property allegedly stolen from the treasury."[6] In re Estate of Ferdinand Marcos Human Rights Litig., 94 F.3d at 546. We have earlier characterized the collection efforts of the Republic to be governmental. Id. The subject matter of the forfeiture action thus qualifies for treatment as an act of state.

The class plaintiffs next argue that the act of state doctrine is inapplicable because the judgment of the Philippine Supreme Court did not concern matters within its own territory. Generally, the act of state doctrine applies to official acts of foreign sovereigns "performed within [their ] own territory." Credit Suisse, 130 F.3d at 1346 (internal quotations omitted). The act of the Philippine Supreme Court was not wholly external, however. Its judgment, which the district court declared invalid, was issued in the Philippines and much of its

---

[6] The Philippine judgment is therefore distinguishable from the foreign judgment in Timberlane Lumber Co. v. Bank of America, 549 F.2d 597 (9th Cir. 1976), relied on by the class plaintiffs here. Timberlane refused to consider the foreign judgment an act of state in part because the "judicial proceedings [ ] were initiated by Caminals, a private party and one of the alleged co-conspirators, not by the Honduran government itself." Id. at 608.

1571

force upon the Philippine Bank arose from the fact that the Bank is a Philippine corporation. It is also arguable whether the bank accounts have a specific locus in Singapore, although they apparently were carried on the books of bank branches there.**7** <u>See Callejo v. Bancomer, S.A</u>, 764 F.2d 1101, 1121-25 (5th Cir. 1985) (discussing differing theories of situs of intangibles). Even if we assume for purposes of decision that the assets were located in Singapore, we conclude that this fact does not preclude treatment of the Philippine judgment as an act of state in the extraordinary circumstances of this case. "[T]he [act of state] doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations." <u>Tchacosh Co. v. Rockwell Int'l Corp.</u>, 766 F.2d 1333, 1337 (9th Cir. 1985). Thus, even when an act of a foreign state affects property outside of its territory, "the considerations underlying the act of state doctrine may still be present." <u>Callejo</u>, 764 F.2d at 1121 n.29. Because the Republic's "interest in the enforcement of its laws does not [ ] end at its borders," <u>id.</u>, the fact that the escrow funds were deposited in Singapore does not preclude the application of the act of state doctrine. The underlying governmental interest of the Republic supports treatment of the judgment as an act of state.

It is most important to keep in mind that the Republic did not simply intrude into Singapore in exercising its forfeiture jurisdiction. The presence of the assets in Singapore was a direct result of events that were the subject of our decision in <u>Credit Suisse</u>. There we upheld as an act of state a freeze order by the Swiss government, enacted in anticipation of the request of the Philippine government, to preserve the Philippine government's claims against the very assets in issue

---

**7** The class plaintiffs cite <u>Hilao v. Estate of Marcos</u>, 95 F.3d 848, 851 (9th Cir. 1996), for the proposition that the locus of a bank deposit is the branch where the deposit is made. <u>Hilao</u>, however, was applying a California statute that specified the place and manner of levying execution; it did not purport to state a general rule for determining the locus of bank accounts.

1572

today. Credit Suisse, 130 F.3d at 1346-47. Indeed, the Philippine National Bank argues that the district court's orders violated our mandate in Credit Suisse "directing the district court to refrain from taking any further action" with regard to assets of the Marcos estate "held or claimed to be held by the [Swiss] Banks." Id. at 1348. The district court held that our mandate did not apply to the assets once they left the hands of the Swiss banks. We need not decide the correctness of that ruling because we conclude that, in these circumstances, the Philippine forfeiture judgment is an act of state. The Swiss government did not repudiate its freeze order, and the Swiss banks did not transfer the funds in the ordinary course of business. They delivered the funds into escrow with the approval of the Swiss courts in order to permit the very adjudication of the Philippine courts that the district court considered invalid. To permit the district court to frustrate the procedure chosen by the Swiss and Philippine governments to adjudicate the entitlement of the Republic to these assets would largely nullify the effect of our decision in Credit Suisse. In these unusual circumstances, we do not view the choice of a Singapore locus for the escrow of funds to be fatal to the treatment of the Philippine Supreme Court's judgment as an act of state.

## 2. The mandamus remedy.

We also conclude that the district court's error qualifies for correction by a writ of mandamus. In so ruling, we consider the factors set forth in Bauman v. U.S. Dist. Ct., 557 F.2d 650 (9th Cir. 1977):

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the fed-

1573

eral rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

Id. at 654-55. "None of these guidelines is determinative and all five guidelines need not be satisfied at once for a writ to issue." Credit Suisse, 130 F.3d at 1345. Rarely will all five "guidelines point in the same direction" or even be relevant to the particular inquiry. See id.

With regard to the first two factors, we conclude that the district court's error is not sufficiently correctable on appeal. No appeal will lie unless a contempt order is issued and sanctions have been imposed. See Estate of Domingo v. Republic of the Philippines, 808 F.2d 1349, 1350 (9th Cir. 1987). The Bank has made a sufficient showing that subjecting its officer to cross-examination will place the officer and the Bank in danger of violating Philippine bank secrecy laws. Requiring the Bank "to choose between being in contempt of court and violating [Philippine] law clearly constitutes severe prejudice that could not be remedied on direct appeal." Credit Suisse, 130 F.3d at 1346.

As for the third Bauman factor, our discussion of the act of state doctrine makes clear that the district court's orders are erroneous as a matter of law. In addition, the district court is attempting to apply its injunction against transfer of assets to the Philippine National Bank as an aider and abettor or agent of the estate of Marcos. But the Bank can hardly have been acting as an aider and abettor or agent of the estate when it transferred assets to the Republic pursuant to the forfeiture judgment of the Philippine Supreme Court, entered over the opposition of the Marcos estate. The error in the district court's orders is apparent.

With regard to the fourth Bauman factor, we cannot say that the district court's error is "oft-repeated. " The fifth factor, however, favors mandamus because the district court's ruling

1574

raises new and important problems regarding the act of state doctrine.

Four of the five <u>Bauman</u> factors thus favor issuance of the writ. We therefore grant the Bank's petition. The district court's order, dated February 25, 2004, to the Philippine National Bank to show cause, and its order, dated April 8, 2004, to the Bank to produce its employee, Rogel L. Zenarosa, for a deposition are vacated. The district court is directed to refrain from any further action against the Philippine National Bank in this action or any other action involving any of the funds that were the subject of the decision of the Philippine Supreme Court dated July 15, 2003. This court retains jurisdiction over the district court litigation, MDL No. 840, to the extent that it involves any action against the Philippine National Bank.

**WRIT OF MANDAMUS ISSUED.**

1575