[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12240

Non-Argument Calendar

_____

ELENA DVOINIK,
Master of Law,
BORIS ZAVADOVSKY,
M.D.,

                                        Plaintiffs-Appellants,

*versus*

PETER PHILIPP,
Doctor of Law,
MARIO RABL,
Precinct Inspector,
SUSANNE HOFLINGER,
District Inspector,
GUNDA EBHART,

2                    Opinion of the Court                 23-12240

Doctor of Law,
THOMAS HOFLINGER,

                                              Defendants-Appellees,


CLEMENS DIETACHMAIR, et al.,

                                              Defendants.


_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-01127-TPB-CPT

_____

Before BRASHER, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Elena Dvoinik and Boris Zavadovsky (collectively, "Plaintiffs"), proceeding *pro se*, appeal the dismissal of their civil suit in which they complained of actions by the Austrian Defendants that occurred within Austria. The district court dismissed with prejudice their second amended complaint (the "complaint") based on application of the "act of state" doctrine. On appeal, Plaintiffs primarily argue that the doctrine is inapplicable because the

Defendants were not on duty or acting as state agents during the alleged actions.

Because Plaintiffs' complaint is based on public acts committed by Austrian officials within Austrian territory, we affirm the district court's dismissal with prejudice.

## I.    COMPLAINT'S ALLEGATIONS

We first review the complaint's allegations.

In their complaint, Plaintiffs brought suit against (1) Mario Rabl and Susanne Hoflinger, Austrian police officers, (2) Thomas Hoflinger, an Austrian police department IT employee, (3) Gunda Ebhart, an Austrian prosecutor, and (4) Peter Philipp, a "prominent criminal attorney" in Austria (collectively, "Defendants"). Plaintiffs contend that Defendants engaged in a scheme that began with and arose out of an allegedly illegal search of Plaintiffs' house in Austria pursuant to a warrant issued by an Austrian court.

Plaintiffs allege Defendants acted illegally on information a witness provided to police, obtained an illegal search warrant for Plaintiffs' house in Austria, conducted a search and illegally seized property belonging to Plaintiffs, conducted various investigations of Plaintiffs, filed official reports regarding Plaintiffs, threatened Plaintiffs with prosecution, and charged them with crimes. Plaintiffs presented their claims regarding the allegedly illegal search and seizure to the Austrian courts, but the Austrian courts rejected the claims.

## A.    Search and Seizure

Specifically, Plaintiffs' complaint alleges that on June 15, 2021, while Plaintiffs were in Florida, "A. Chuprikov" sent Austrian authorities a "deliberately false denunciation" by email, indicating that Plaintiffs were producing forged documents "for obtaining of foreign citizenships" in their house in Gloggnitz, Austria with the intent to sell the forged documents.

Based on Chuprikov's information, the Austrian authorities initiated a criminal investigation and issued a search warrant for Plaintiffs' house on June 30, 2021.  The search warrant authorized the Austrian authorities to seize exclusively "[e]quipment for professional forgery of documents, certificates and other evidence (special apparatus; embossed seals and stamps from government authorities; UV transillumination device; etc.), forged documents as well as other evidence related to the existent suspicion."  (Font altered.)

Plaintiffs' complaint alleges that on July 12, 2021, Defendants Susanne and Thomas Hoflinger (Austrian police department employees) presented the search warrant to Plaintiffs' neighbors, the Rottensteiners, and obtained a key to Plaintiffs' house from the Rottensteiners.  Plaintiffs contend that the Hoflingers entered the house and conducted a search.  According to Plaintiffs, Thomas Hoflinger used passwords obtained from Plaintiffs' notebooks to (1) log into Plaintiffs' computers, (2) hack Plaintiffs' emails, and (3) obtain electronically stored information

containing Plaintiffs' personal and business data and correspondence.

Then, Austrian police officer Rabl allegedly arrived on the scene. Plaintiffs allege that police officers Rabl and Susanne Hoflinger, along with police employee Thomas Hoflinger, "inspected the [P]laintiffs' personal computers, the [P]laintiffs' ESI[,] and chaotically downloaded it." Plaintiffs allege that police officer Rabl seized: (1) two computers; (2) personal documents, including U.S. classified information, birth certificates, and education certificates; (3) valuable property, including "jewelry and antiques worth more than $1 million"; and (4) tax declarations, receipts, and proof of authorized deductions.

## B.    Continued RICO Enterprise[1]

The day after the search and seizure, police officer Rabl called Plaintiffs and informed them of the search. Police officer Rabl also recommended that Plaintiffs retain Defendant Philipp as their criminal attorney. On July 14, 2021, Plaintiffs emailed police officer Rabl regarding case testimony and a criminal complaint against Chuprikov. That same day, Plaintiffs also called attorney Philipp.

---

[1] Plaintiffs explicitly state that their claims are limited to RICO acts "committed between 7/12/2021 and 11/7/2021." Thus, we do not discuss facts recounted in the complaint that allegedly occurred after November 7, 2021.

Pursuant to her conversation with Defendant Philipp, Plaintiff Dvoinik sent Philipp an email summarizing what had happened and listing the seized property. Plaintiffs also requested that attorney Philipp "apply by prosecutor's office an initiation of criminal investigation against Chuprikov" for defamation and extortion. Defendant Philipp agreed to represent Plaintiffs, "to clarify the case matter[,] and to speak to the prosecutor investigating the Plaintiffs' case as soon as possible."

As part of the scheme, Plaintiffs allege that on August 11, 2021, Defendant Philipp "tried to extort a bribe from the Plaintiffs in favor of the Defendant Gunda Ebhart [the prosecutor] for the return of Plaintiffs['] property and the termination of the criminal investigation" against Plaintiffs. Plaintiffs refused to pay the bribe. Plaintiffs sent to the prosecutor's office, by mail, a "criminal Complaint against Chuprikov" and "a Complaint" against the Austrian police based on the police's July 12, 2021 search.

In November 2021, Plaintiffs also filed "a complaint" with the Austrian Data Protection Committee, complaining of the Austrian police's disclosure of Plaintiffs' personal data in Russia and abroad. In addition, "Plaintiffs filed multiple complaints with Austrian authorities."[2]

---

[2] Plaintiffs' appellate briefs contain a number of factual allegations that are not contained in the operative complaint, and thus we do not recite them.

## II.    PROCEDURAL HISTORY

On May 16, 2022, Plaintiffs filed their initial complaint against Defendants, among others. On August 29, 2022, Defendant Philipp moved to dismiss. Then, on October 3, 2022, Plaintiffs filed an amended complaint. After Plaintiffs filed their first amended complaint, the district court denied Defendant Philipp's motion to dismiss as moot.

On October 28, 2022, Defendants Ebhart, Susanne Hoflinger, Thomas Hoflinger, and Rabl filed a motion to dismiss the first amended complaint based on, *inter alia*, the act of state doctrine. Additionally, Defendant Philipp filed a number of letters with the district court, all of which were in German.

On March 15, 2023, the district court granted Defendants Ebhart, Susanne Hoflinger, Thomas Hoflinger, and Rabl's motion to dismiss and dismissed the first amended complaint without prejudice as to all Defendants. In its order, the district court also noted that Defendant Philipp raised the act of state doctrine in his motion to dismiss the initial complaint but did not move to dismiss the first amended complaint.

The district court further explained that the act of state doctrine may be raised *sua sponte* and that its application turns on the nature of the claims asserted rather than the status of a particular defendant. Therefore, the district court concluded as to all Defendants that the act of state doctrine "appears to foreclose Plaintiffs' claims by their very nature," but "in an abundance of

caution," the court granted Plaintiffs leave to file a second amended complaint.

On April 10, 2023, Plaintiffs filed their second amended complaint, which we refer to as the complaint now at issue. On April 24, 2023, Defendants Ebhart, Susanne Hoflinger, Thomas Hoflinger, and Rabl filed a motion to dismiss again based on, *inter alia*, the act of state doctrine.

On May 9, 2023, Plaintiffs filed a motion for a clerk's default against Defendant Philipp. The district court received correspondence from Defendant Philipp in German dated April 18, 2023 and May 10, 2023 and entered the correspondence on the docket on May 17, 2023.

On June 30, 2023, the district court dismissed Plaintiffs' complaint with prejudice as to all Defendants. The district court incorporated by reference its first, longer dismissal order (as to the first amended complaint) that discussed why the act of state doctrine applied here. The district court concluded that the current complaint "essentially tells the same story and alleges the same scheme of extortion and theft involving the Austrian police and prosecutors" and that Plaintiffs' "conclusory assertions" that "Defendants' actions took place while they were off duty and were 'not related to their official duties,' and that the police and prosecutor's offices were used by Defendants as 'cover' for their illegal activities" were "belied by the inherent nature of the alleged actions themselves as exercises of sovereign power." The district court also terminated any pending motions and deadlines.

Plaintiffs also filed four other federal lawsuits in the United States related to the incidents alleged in this case. *See* 8:22-cv-01700-CEH-STF (M.D. Fla.); 1:22-cv-24226-JEM (S.D. Fla.); 8:23-cv-00623-KKM-CPT (M.D. Fla.); 1:23-cv-04216-LTS (S.D.N.Y.). Relevant to this appeal, Plaintiffs brought suit against the Republic of Austria "for the activities of [the alleged] RICO [e]nterprise." *See* 8:22-cv-01700-CEH-STF.

## III.    STANDARD OF REVIEW

We review *de novo* the applicability of the act of state doctrine. *Comparelli v. Republica Bolivariana de Venez.*, 891 F.3d 1311, 1318 (11th Cir. 2018).

We construe a *pro se* litigant's pleadings liberally. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). However, issues raised for the first time in a reply brief are considered abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## IV.    DISCUSSION

### A.    Act of State Doctrine

The act of state doctrine is a judicially created rule that "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964); *see also Mezerhane v. Republica Bolivariana de Venez.*, 785 F.3d 545, 551-52 (11th Cir. 2015). The doctrine stands on the principle that "conduct of one independent government cannot be successfully questioned in the courts of

another," because "permit[ting] the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations." *Banco Nacional de Cuba*, 376 U.S. at 417-18 (citations and internal quotations omitted).

The act of state doctrine applies where a court is required to declare invalid the official act of a foreign sovereign, done within its own territory. *W.S. Kirkpatrick & Co. v. Env't. Tectonics Corp., Int'l*, 493 U.S. 400, 405-06 (1990); *Mezerhane*, 785 F.3d at 552. This doctrine is premised on (1) "international comity," (2) "respect for the sovereignty of foreign nations on their own territory," and (3) domestic separation of powers concerns—the "strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." *See W.S. Kirkpatrick*, 493 U.S. at 404, 408 (quotation marks omitted).

Here, we conclude that the district court did not err in dismissing Plaintiffs' complaint with prejudice under the act of state doctrine. Plaintiffs' complaint almost exclusively concerns events that they alleged happened in Austria and that were performed in an alleged scheme by Austrian law enforcement, the Austrian prosecutor, defense counsel, and the Austrian judiciary. The only link this case has to the United States is that the named Plaintiffs happen to reside in Florida. Yet Plaintiffs seek to have United States courts determine the validity of Austrian officials'

actions in Austria, which the act of state doctrine prohibits. *See Banco Nacional de Cuba*, 376 U.S. at 401; *Mezerhane*, 785 F.3d at 552. This type of scrutiny over Austrian officials' actions could "imperil the amicable relations between [the] governments." *See Banco Nacional de Cuba*, 376 U.S. at 417-18.

Plaintiffs argue that the act of state doctrine does not bar their case because Defendants are either not officials or were not on duty. The crux of this argument is that because the search of Plaintiffs' home in Austria was performed without a valid search warrant and exceeded the scope of the search warrant, Defendants were not "on duty." Plaintiffs also contend that their property in Austria was "seized without authority" because the scope of the search warrant did not extend to items unrelated to forgery and did not provide for the search of Plaintiffs' computers.

Nonetheless, the act of state doctrine still applies because the district court and our Court are necessarily being asked to declare invalid the official acts of Austria, including the issuance of search warrants and criminal charges. *See Banco Nacional de Cuba*, 376 U.S. at 401; *W.S. Kirkpatrick*, 493 U.S. at 405-06; *Mezerhane*, 785 F.3d at 552. The alleged acts of Defendants, whether valid or not, were ostensibly exercises of Austrian police power, were carried out entirely within Austria, and involved a search and seizure affirmed as legal by the Austrian courts.

At bottom, the factual predicate for Plaintiffs' claim is that an official act of a foreign sovereign was invalid. *See W.S. Kirkpatrick*, 493 U.S. at 405. As such, Plaintiffs' suit is barred by the

act of state doctrine. *See, e.g.*, *Nocula v. UGS Corp.*, 520 F.3d 719, 728 (7th Cir. 2008) (holding that a lawsuit against a corporation for losing computers which allegedly were wrongfully seized by the Polish authorities in connection with criminal prosecution and "mysteriously disappeared" was barred by the act of state doctrine because it necessarily called for "an inquiry into the acts of a foreign sovereign" (quotation marks omitted)); *Hourani v. Mirtchev*, 796 F.3d 1, 15 (D.C. Cir. 2015) (holding that a defamation lawsuit was barred because it could not be decided "without a court having to inquire into the legal validity or tortiousness" of statements on the Kazakh embassy website); *see also W.S. Kirkpatrick*, 493 U.S. at 405 (stating that treating a sovereign action as "tortious would have required denying [it] legal effect"); *Underhill v. Hernandez*, 168 U.S. 250, 251, 253-54 (1897) (holding that the alleged acts of the defendant military commander in detaining the plaintiff "were the acts of the government of Venezuela, and as such are not properly the subject of adjudication in the courts of another government" (quotation marks omitted)).

## B.    Second Hickenlooper Amendment

In their reply brief, Plaintiffs also cite the Second Hickenlooper Amendment.[3]    Because Plaintiffs raised their

---

[3] Congress passed the Second Hickenlooper Amendment in response to the Supreme Court's decision in *Banco Nacional de Cuba v. Sabbatino*. *See Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1293-94 (11th Cir. 2001) (concluding the Second Hickenlooper Amendment "overrule[d], at least with respect to confiscations of property, the *Sabbatino* decision to the extent that it held that

Hickenlooper argument for the first time in their reply brief, we are not required to consider whether the Second Hickenlooper Amendment applies here. *See Timson*, 518 F.3d at 874.

And in any event, Defendants Ebhart, Susanne Hoflinger, Thomas Hoflinger, and Rabl moved to strike the Hickenlooper argument in Plaintiffs' appellate reply brief. Then Plaintiffs responded with their own motion to strike the Defendants' motion and stated that Plaintiffs are not asking this Court to apply the Second Hickenlooper Amendment. Specifically, Plaintiffs' motion to strike stated they "did not ask the Court to apply Second Hickenlooper Amendment" and referenced the Second Hickenlooper Amendment solely "with the purpose to explain law." Thus, we need not consider the Second Hickenlooper Amendment for this reason too.[4]

## C.    Plaintiffs' Motion for Clerk's Default Against Philipp

Finally, in their appellate brief, Plaintiffs assert that they were entitled to have the clerk enter default judgment against Defendant Philipp under Federal Rule of Civil Procedure 55(b)(1). Rule 55(b)(1) requires the clerk to enter judgment against a defendant who has been defaulted for not appearing "[i]f the plaintiff's claim

---

the act of state doctrine would apply without regard to whether a foreign state's actions violated international law").

[4] In light of the above, the Court denies (1) Defendants-Appellees' motion to strike portions of Plaintiffs-Appellants' reply brief and (2) Plaintiffs-Appellants' motion to strike the Appellees' motion and to impose sanctions on their attorney.

is for a sum certain or a sum that can be made certain by computation." FED. R. CIV. P. 55(b)(1). For entry of default judgment by the clerk, the plaintiff must submit "an affidavit showing the amount due." *Id.*

Plaintiffs' argument about a default judgment fails for two reasons. First, Plaintiffs' appellate brief contains only conclusory references to a default judgment in their "Statement of the Issues" and "Statement of the Case" that do not show why Rule 55(b)(1) applies here. So, Plaintiffs have abandoned any argument regarding default against Defendant Philipp. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014) (holding that a party abandons an issue by making only passing references to it in the statement of the case, the summary of the argument, or the argument sections of a brief).

Second, even assuming arguendo that Plaintiffs properly presented their default judgment argument, they have made no showing that their claim is "for a sum certain or a sum that can be made certain by computation" and they did not submit "an affidavit showing the amount due" in the district court. *See* FED. R. CIV. P. 55(b)(1). Accordingly, Plaintiffs have failed to show any default judgment was proper.

## V.   CONCLUSION

For the forgoing reasons, we affirm the district court's dismissal of Plaintiffs' second amended complaint with prejudice as to all Defendants.

**AFFIRMED.**