# Third District Court of Appeal

## State of Florida

Opinion filed December 27, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2622
Lower Tribunal No. 09-34950
_____

**The Republic of Ecuador,**
Appellant,

vs.

**Roberto Isaias Dassum and William Isaias Dassum,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Squire Patton Boggs (US) LLP, and Alvin B. Davis, Digna B. French, and Rafael Langer-Osuna, for appellant.

White & Case LLP, and Raoul G. Cantero, Maria J. Beguiristain, and Jesse L. Green; Lewis Tein PL, and Michael R. Tein, for appellees.

Before SUAREZ, LAGOA, and LUCK, JJ.

LAGOA, J.

The Republic of Ecuador ("Republic") appeals from a final judgment entered in favor of brothers Roberto Isaias Dassum and William Isaias Dassum (the "Isaiases"). For the reasons set forth below, we reverse and remand for the trial court to hold a trial solely on damages. Because the liability of the Isaiases has been determined through an act of state, the only issue that remains is the amount of indebtedness, if any, owed by the Isaiases to the Republic.

I.    FACTUAL AND PROCEDURAL HISTORY

This is the second time the parties have appeared before this Court in the Republic's effort to obtain a money judgment against the Isaiases for debts allegedly due from the failure of the Ecuadorian bank, Filanbanco S.A. ("Filanbanco"). See Republic of Ecuador v. Isaias Dassum (Isaias I), 146 So. 3d 58 (Fla. 3d DCA 2015). A brief factual and procedural history is necessary in order to discuss the current posture of this case before this Court.

The Isaiases were senior administrators and indirect shareholders of Filanbanco. On December 2, 1998, as a result of a liquidity crisis, Filanbanco was placed into restructuring under the jurisdiction and control of the Agencia de Garantía de Depósitos ("AGD"), an agency similar to the Federal Deposit Insurance Corporation in the United States. See Isaias I, 146 So. 3d at 60. On May 8, 2001, the accounting firm of Deloitte & Touche submitted a report (the

"Deloitte Report") to the Ecuadorian Superintendent of Banks, assessing Filanbanco's losses as of December 2, 1998, at $661.5 million.

Article 29 of Ecuador's Act for Economic Reorganization in the Area of Taxes and Finance ("Article 29"),[1] enacted in 2002, provides that administrators who have declared false technical equity and altered balance sheets shall guarantee deposits in the financial institution with their personal equity.[2]  On February 26, 2008, the Banking Board of Ecuador passed Resolution No. JB-2008-1084 ("JB-1084"), which authorized Ecuador's Superintendent of Banks and Insurance to approve the Deloitte Report.  In March 2008, the Superintendent of Banks and Insurance passed Resolution No. SBS-2008-185 ("SBS-185"), approving the Deloitte Report.

---

[1] All quotations of relevant Articles, Resolutions and acts of state are from translations of the documents from Spanish to English contained in the Record.

[2] Article 29 states as follows:

> In cases where administrators have declared an unreal technical equity, altered balance sheet figures, or charged interest rates on interest, they shall guarantee deposits in the financial institution with their personal equity, and the Deposit Guarantee Agency may seize property publicly known to belong to those shareholders and transfer it to a security trust pending establishment of its true ownership, in which case it shall become part of the resources of the Deposit Guarantee Agency and may not be disposed of during this period.

On July 8, 2008, the AGD issued Resolution Number AGD-UIO-GG-2008-12 ("AGD-12"), finding the Isaiases, as administrators of Filanbanco, liable for the bank's losses and ordering the seizure of their property. Specifically, AGD-12 states that "the declaration of the unrealistic technical equity and the alteration of the balances in Filanbanco on the behalf of its administrators, hid the real situation of this financial institution and the losses cut on December 2, 1998." AGD-12 also recognizes the losses set forth in JB-1084. Invoking Article 29, Article 1 of AGD-12 orders "the seizure of all assets of properties belonging to administrators shareholders of Filanbanco S.A. until December 2, 1998 including the assets belonging to their property." The Isaiases are specifically listed as administrators.[3] Portions of the Isaiases' property in Ecuador were seized by the AGD.

On April 29, 2009, the AGD filed a complaint against the Isaiases in Miami-Dade Circuit Court.[4] The AGD alleged that the Isaiases still owed the AGD at

_____

[3] Article 5 of AGD-12 states:

> Those who were Administrators of Filanbanco S.A. on or before December 2nd. 1998, and as for ordinance of Article 29 of the Reorganization of Economic matters in the Financial Tax Area are subject to these resolutions, are as follows: **Roberto Isaias Dassum**, Executive President; **William Isaias Dassum** Vice-Executive President . . . .

(emphasis added).

[4] By this point in time, the Isaiases were located in Miami. See Isaias I, 146 So. 3d at 60 ("In 2003, Ecuador issued arrest warrants for the Isaiases, who were by then

4

least $200 million and that the Isaiases have at least $20 million in publicly-known property in Miami-Dade County. Specifically, the AGD alleged that "[a]s former shareholders, officers, executives and administrators of Filanbanco, S.A., the Isaias brothers are liable to the AGD under Article 29 for the $661.5 Million Filanbanco Loss, less any sums recovered from the AGD's seizure and sale of their assets in Ecuador." The Isaiases filed an answer, affirmative defenses,[5] and counterclaims.

The Isaiases filed a motion for summary judgment asserting, among other things, that the Republic's[6] actions constituted an attempt to summarily confiscate the Isaiases' property located in Miami-Dade County. See Isaias I, 146 So. 3d at 60-61. The trial court entered summary judgment in favor of the Isaiases, and the Republic appealed to this Court. As this Court stated in Isaias I, the issue on appeal was "whether the extraterritoriality exception to the act of state doctrine bars the Republic's claims in Florida to recover some $200 million in alleged damages following the failure of Ecuador's (formerly) largest bank, Filanbanco."[7]

_____

in Miami.").

[5] The Isaiases asserted numerous affirmative defenses: 1) failure to state a cause of action; 2) statute of limitations; 3) laches; 4) fraud; 5) illegality; 6) comity; 7) no judgment; 8) payment; 9) failure to furnish proof of loss; 10) release; 11) estoppel; 12) accord and satisfaction; 13) contributory negligence; and 14) exhaustion of administrative remedies.

[6] In March 2010, the Isaiases and the Republic each filed a motion to substitute the Republic for the AGD because the AGD was dissolved pursuant to the laws of Ecuador on December 31, 2009. On March 19, 2010, the trial court entered an order substituting the Republic for the AGD.

Id. at 59. This Court reversed and remanded for further proceedings, concluding that "(1) the record demonstrates genuine issues of fact regarding the allegedly-remaining indebtedness of the Isaiases to the Republic; and (2) the Republic's complaint seeking remedies in Florida is not based, as argued by the Isaiases, on a 'confiscatory decree of a foreign sovereign . . . acting beyond its territorial dominion.'" Id.

The matter proceeded to a bench trial at which the Republic presented the testimony of an expert in Ecuadorian law who authenticated the Republic's acts of state—Article 29 and the various Resolutions at issue.[8] The Isaiases presented witnesses and bank records in an attempt to prove they committed no wrongdoing

[7] The extraterritorial exception to the act of state doctrine applies when another state attempts to confiscate property located within the United States:

> There is, however, "a well-established corollary to the act of state doctrine, the so-called 'extraterritorial exception.'" Tchacosh Co., Ltd. v. Rockwell Int'l Corp., 766 F.2d 1333, 1336 (9th Cir. 1985). Under that exception, "when property confiscated is within the United States at the time of the attempted confiscation, our courts will give effect to acts of state 'only if they are consistent with the policy and law of the United States.'" Republic of Iraq v. First Nat'l City Bank, 353 F.2d 47, 51 (2d Cir.1965) (Friendly, J.).

Villoldo v. Castro Ruz, 821 F.3d 196, 202 (1st Cir. 2016).

[8] It is undisputed that Article 29 and Resolutions JB-1084, SBS-185, and AGD-12, constitute acts of state. In its final judgment, the trial court found that Article 29 and the Resolutions "are Acts of State of the Republic of Ecuador," and the Isaiases do not contend otherwise.

and did not cause any loss to Filanbanco. After a three-day trial, the trial court entered final judgment in favor of the Isaiases, finding that the Republic lacked standing to bring suit and that the lawsuit was barred by the statute of limitations. This appeal ensued.

## II.    STANDARD OF REVIEW

Pure questions of law are reviewed de novo. The trial court's findings that the Republic lacked standing and that the Republic's suit was barred by the statute of limitations involve issues of law. Herbits v. City of Miami, 207 So. 3d 274, 281 (Fla. 3d DCA 2016) (stating that standing is a pure question of law that is reviewed de novo); Nationstar Mortg., LLC v. Sunderman, 201 So. 3d 139, 140 (Fla. 3d DCA 2015) (stating that a legal issue involving a statute of limitations question is reviewed de novo). As such, this Court's standard of review is de novo.

To the extent the final judgment addresses issues of foreign law, this Court's standard of review is also de novo. Transportes Aereos Nacionales, S.A. v. De Brenes, 625 So. 2d 4, 5 (Fla. 3d DCA 1993) ("A trial court's determination of foreign law is treated as a ruling on a question of law over which an appellate court exercises plenary review.").

## III.    ANALYSIS

The trial court's entry of final judgment in favor of the Isaiases was based upon two specific findings: (1) that the Republic lacked standing to bring suit; and

(2) that the lawsuit was barred by the statute of limitations. We find that the trial court erred in both findings, and we address each issue separately.

A. Standing

With regard to the issue of standing, the trial court found that the Republic lacked standing and authority to sue because it failed to present evidence that the Republic had assumed the right to pursue this lawsuit from the AGD. We hold that the trial court erred in this finding because the Isaiases waived the issue of standing.

It is well-established that standing is an affirmative defense that must be raised by the defendant to avoid waiver. Krivanek v. Take Back Tampa Political Comm. 625 So. 2d 840, 842 (Fla. 1993); Cong. Park Office Condos II, LLC v. First–Citizens Bank & Tr. Co., 105 So. 3d 602, 607 (Fla. 4th DCA 2013) (noting that lack of standing is an affirmative defense which must be pled to avoid waiver); Schuster v. Blue Cross & Blue Shield of Fla., Inc., 843 So. 2d 909, 912 (Fla. 4th DCA 2003) ("There is no question that lack of standing is an affirmative defense that must be raised by the defendant and that the failure to raise it generally results in waiver."). The Isaiases do not and cannot dispute that they did not plead the affirmative defense of standing below.

Raised at oral argument for the first time, the Isaiases argued that the issue of standing was tried by consent of the parties. We find this argument without

8

merit. In order for a trial court to enter judgment upon an issue that was not pled, the parties must provide express or implied consent. See, e.g., Dysart v. Hunt, 383 So. 2d 259, 260 (Fla. 3d DCA 1980). It is undisputed—and the Isaiases conceded this point at oral argument—that the Republic did not expressly consent to trying the issue of standing. As previously noted, consent may also be implied. For example, "[a]n issue is tried by consent where the parties fail to object to the introduction of evidence on the issue." Dep't of Revenue v. Vanjaria Enters., 675 So. 2d 252, 254 (Fla. 5th DCA 1996). The Isaiases do not point to the admission of unobjected-to evidence on the issue of standing such that the matter could be construed as tried by implied consent. Because the issue of standing was not pled as an affirmative defense and was not tried by consent, we find the trial court erred in entering judgment in favor of the Isaiases on this ground. See Cortina v. Cortina, 98 So. 2d 334, 337 (Fla. 1957) ("It is fundamental that a judgment upon a matter entirely outside of the issues made by the pleadings cannot stand.").

B. Statute of Limitations

As noted above, the trial court also found that the Republic's action was barred by the four-year limitations period set forth in sections 95.11(3)(f) and (p), Florida Statutes (2016).[9] In making its finding, the trial court reasoned that there

was no evidence that the Isaiases committed any wrongful act after December 2, 1998—the date Filanbanco was placed into restructuring and the last day the Isaiases were Filanbanco's administrators—and therefore, more than ten years elapsed between the last possible date on which a wrongful act could have occurred and the filing of the lawsuit on April 29, 2009. On appeal, the Republic argues that AGD-12 established that the Isaiases' liability commenced on July 8, 2008, and that the trial court violated the act of state doctrine when it found that the statute of limitations commenced, at the latest, on December 2, 1998, rather than on July 8, 2008. We agree with the Republic.

Under the act of state doctrine, "'the act within its own boundaries of one sovereign State . . . becomes . . . a rule of decision for the courts of this country.'" W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l., 493 U.S. 400, 406 (1990) (quoting Ricaud v. Am. Metal Co., 246 U.S. 304, 310 (1918)); see also Banco

---

[9] Sections 95.11(3)(f) and (p), states:

> Actions other than for recovery of real property shall be commenced as follows: . . .
>
> **(3) Within four years.—**
>
> (f) An action founded on a statutory liability.
> . . . .
>
> (p) Any action not specifically provided for in these statutes.

Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416 (1964).  For that reason, "the act of state doctrine requires American courts to presume the validity of 'an official act of a foreign sovereign performed within its own territory.'"  Republic of Austria v. Altmann, 541 U.S. 677, 713 (2004) (Breyer, J., concurring) (quoting W.S. Kirkpatrick, 493 U.S. at 405); see also Sabbatino, 376 U.S. at 401 ("The act of state doctrine . . . precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.").

"Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign.  When that question is not in the case, neither is the act of state doctrine."  W.S. Kirkpatrick, 493 U.S. at 406 (emphasis in original).  As the Supreme Court has explained, the doctrine applies when "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."  Id. at 405.

The Isaiases' liability for losses to Filanbanco was established by an act of state on July 8, 2008.  Specifically, on that date, the AGD issued AGD-12, which found that "the declaration of the unrealistic technical equity and the alteration of the balances in Filanbanco on the behalf of its administrators, hid the real situation

11

of this financial institution and the losses cut on December 2, 1998." AGD-12 goes on to list the Isaiases, among others, as administrators of Filanbanco. Invoking Article 29, Article 1 of AGD-12 proceeds to "order the seizure of all assets of properties belonging to administrators shareholders of Filanbanco S.A. until December 2, 1998 including the assets belonging to their property." Because the Isaiases' liability for losses to Filanbanco was established on July 8, 2008, when the AGD issued AGD-12, we find that the trial court violated the act of state doctrine when it found that December 2, 1998, was the date on which the Isaisases' liability accrued for statute of limitation purposes.

Pursuant to the act of state doctrine, neither the trial court nor this Court may inquire into the validity of the Republic's July 8, 2008, determination of liability as set forth in AGD-12 or find otherwise. The trial court's finding that liability accrued on December 2, 1998, rather than on July 8, 2008, is a clear violation of the act of state doctrine as the trial court rejected the validity of the Republic's public act. See FOGADE v. ENB Revocable Tr., 263 F.3d 1274, 1296 (11th Cir. 2001) (finding that the act of state doctrine properly applied to bar the defendants' affirmative defense challenging the lawfulness of the Venezuelan government agency's intervention of the Venezuelan company-plantififf); Bank Tejarat v. Varsho-Saz, 723 F. Supp. 516, 521-22 (C.D. Cal. 1989) (striking the affirmative defenses of setoff and unclean hands because adjudication of those affirmative

12

defenses would require the court to judge the legality of acts of a foreign state completed within that state's territory in violation of the act of state doctrine).

Because the act of state doctrine compels this Court to construe the statute of limitations to begin to run on July 8, 2008—the date the Isaiases' liability for losses to Filanbanco was established in AGD-12, the Republic's act of state—we find that the complaint filed less than a year later on April 29, 2009, was not barred by the four-year statute of limitations set forth in section 95.11(3)(p), Florida Statutes.

C. Proceedings on Remand

To avoid any further confusion, the proceedings on remand shall be limited solely to the issue of damages. Because an act of state determined that the Isaiases are liable, the Republic is not required to prove the Isaiases' liability regarding the losses to Filanbanco.[10] In other words, the Isaiases' liability for the

---

[10] The Isaiases' argument that Isaias I directed that the Republic prove *both* liability and damages on remand is without merit. First, a finding of no liability would be in violation of the act of state doctrine, as AGD-12 has already established the Isaiases' liability. Second, the Isaiases' reliance on language in Isaias I that the "validity" of the Republic's claim was subject to proof is misplaced. The issue before this Court in Isaias I was whether the "extraterritoriality exception" to the act of state doctrine applied to the Republic's claim. Isaias I, 146 So. 3d at 61. This Court held that it did not, and reversed the summary judgment in favor of the Isaiases because issues of fact remained as to the Isaiases' "allegedly-remaining indebtedness to the Republic." Id. at 63. Given the issue on appeal in Isaias I and this Court's holding in Isaias I, the Court's reference to the "validity" of the Republic's claims is a reference to the amounts allegedly still due, not the underlying liability established in AGD-12.

losses to Filanbanco has been established in the Republic's act of state—AGD-12—and pursuant to the act of state doctrine, no court in this country may find otherwise.

As this Court noted in Isaias I, however, this does not mean that the Republic is entitled to automatically seize the Isaiases' property in Miami-Dade County. Isaias I, 146 So. 3d at 62-63. The Republic's claims that the Isaiases still owe money to the Republic are "subject to proof as in any claim by a foreign sovereign against one of its citizens residing in the United States." Id. at 62. Indeed, the Isaiases have stated numerous affirmative defenses as to damages, including accord and satisfaction, release, and payment, all of which, if not barred by the act of state doctrine, may be asserted on remand and considered by the trial court.

IV.   CONCLUSION

For the reasons stated, we reverse the final judgment entered in favor of the Isaiases and remand the matter to the trial court for a trial on damages. Because the liability of the Isaiases has been determined through an act of state, the only issue that remains to be tried is the amount of indebtedness, if any, owed by the Isaiases to the Republic.

Reversed and remanded for further proceedings.