DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE COHEN'S ORGANIZATION,**
Appellant,

v.

**PREMIER FIRE ALARMS** and **INTEGRATION SYSTEMS, INC.,** and
**COLLECTION D'ART, LLC,**
Appellees.

No. 4D21-60

[April 14, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Michael Davis, Judge; L.T. Case Nos. COSO17-3150 and CACE19-12871.

Andrew S. Atkins of Shevlin & Atkins, Bay Harbor Islands, for appellant.

No brief filed on behalf of appellees.

MAY, J.

A property management company appeals a final judgment entered against it following a bench trial. It argues the trial court erred in entering the judgment because the management company was not a party to the agreement. We agree and reverse.

The management company and a tenant, Collection D'art, share the same president, but the management company does not own the tenant. The tenant entered into a five-year agreement with the plaintiff, a fire alarm installation company, to provide security alarm services. The tenant and its president were listed on the billing information.

Prior to the expiration of the agreement, a management company representative emailed the plaintiff regarding its contract with the tenant. The e-mail included a signature block from the management company's representative and the management company's e-mail address. It stated: "We need to close our account out effective immediately, as we are vacating the space."

The management company representative then e-mailed a cancellation letter. The cancellation letter was sent on the tenant's letterhead and bore the president's signature. The letterhead reflected an address matching the address listed in the signature block of the e-mails sent from the management company's representative.

The plaintiff sued the tenant and management company for breach of contract. The statement of claim alleged merely that the claim was for work done and materials furnished pursuant to a written instrument and attached the written agreement.

The management company moved to dismiss the claim, arguing it was not a party to the agreement and had not received any services from the plaintiff. It further argued the written contract contradicted the claim because it showed the agreement was solely between the plaintiff and the tenant. The motion was never set for hearing.

At a case management conference, the trial court denied the motion because it had not been prosecuted. The case proceeded to a bench trial.

At trial, the plaintiff's owner testified the tenant was the customer under the agreement. He testified the tenant had hired the plaintiff to provide fire alarm services. The plaintiff provided those services at the property address in the agreement. The plaintiff's owner testified he believed the management company was responsible for the agreement's performance because the president had signed the agreement and all emails and correspondence came from the management company.

The tenant had paid all invoices until the cancellation letter was sent. The plaintiff's owner testified the invoices were billed to the management company and the management company had not objected to it doing so. The plaintiff's owner acknowledged, however, that the checks attached to the invoice payments came from the tenant. He testified the management company paid "one or two payments at best."

After the plaintiff rested, the management company moved for involuntary dismissal; the trial court denied the motion.

The management company president testified he was the president and owner of both companies, but the management company did not own the tenant. He explained that while the management company manages various entities and properties, it is a different entity than those it manages. The president did not know why the invoices were sent to the management company. The management company did not object because

2

the invoices were paid under the tenant's name. The president explained that he wrote and signed the cancellation letter on behalf of the tenant and asked his secretary to e-mail the cancellation letter to the plaintiff.

During closing, the plaintiff argued the management company "took on the obligations of [the tenant]" because: 1) the cancellation letter provided the management company's address and was sent from the management company's e-mail; and 2) the plaintiff sent the tenant's invoices to the management company. The management company tried to respond that the tenant was not the alter ego of the management company when the trial court interrupted:

> **Court:** Counselor, I'm going to stop you.
>
> **Management Company:** Sure.
>
> **Court:** This is inappropriate and I'll tell you why. You filed a motion on behalf of your client to dismiss as to [the management company], that motion was never prosecuted. I don't know why it was never prosecuted. It was inappropriate that it was never prosecuted [so] I denied it. You're trying to bootstrap now and argue that. I'm not going to allow it.

The management company then concluded by arguing the evidence established the tenant was the only party to the contract.

The trial court found the agreement valid, that the tenant breached the agreement, and that the tenant and management company were jointly and severally liable for the money due under the agreement. The trial court reasoned the president "inserted" the management company into the agreement.

The trial court entered a final judgment in favor of the plaintiff. The final judgment stated that the management company and tenant "are enmeshed to such a degree that they are virtually the same entity, and this creates a contractual relationship between [the management company and plaintiff]."

The management company appealed to the circuit court, which transferred the case to us.

The management company argues the trial court erred in finding it was jointly and severally liable for the tenant's breach because the evidence

3

was insufficient to establish the tenant was its alter ego and the plaintiff did not establish any improper conduct.

"Pure questions of law are reviewed de novo." *Republic of Ecuador v. Dassum*, 255 So. 3d 390, 394 (Fla. 3d DCA 2017).

Generally, "[u]nless a person is a party to a contract, that person may not sue—or, for that matter, be sued—for breach of that contract where the non-party has received only an incidental or consequential benefit of the contract." *Morgan Stanley DW, Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004). Where a parent company is not a party to a contract, it may be held liable for its subsidiary's breach of contract only where the subsidiary is shown to be the alter ego of the parent **and** was used to mislead the parent's creditors or to fraudulently avoid liability. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984).

Here, the plaintiff failed to allege or prove the tenant was the alter ego of the management company or that it was used to mislead or defraud the plaintiff. The plaintiff did not allege improper conduct in its statement of claim. It did not argue the tenant's improper conduct at trial. And, the trial court's final judgment does not find improper conduct on the tenant's part. *See also WH Smith, PLC v. Benages & Assocs.*, 51 So. 3d 577, 581 (Fla. 3d DCA 2010).

At best, the evidence showed the tenant paid its invoices under the agreement until it became unable to do so. This conduct does not rise to the level of impropriety required to pierce the corporate veil. *Geigo Props., L.L.P. v. R.J. Gators Real Est. Grp., Inc.*, 849 So. 2d 1109, 1110 (Fla. 4th DCA 2003) ("[T]he trial court did not err when it found that the mere use of a shell corporation to enter into the lease, and the subsequent breach of the lease by failing to pay rent, did not constitute the type of improper conduct necessary to pierce the corporate veil.").

Because the plaintiff did not allege or prove the requisite misconduct, the trial court erred in finding the management company jointly and severally liable under an agreement to which it was not a party. *See Walter T. Embry, Inc. v. LaSalle Nat'l Bank*, 792 So. 2d 567, 569 (Fla. 4th DCA 2001) ("The mere fact that a company may be a parent, or wholly-owned corporation, does not itself suggest an impropriety sufficient to disregard the distinctness of the legal entity formed.").

Having reached this conclusion, we need not address the management company's second argument that the trial court violated its due process rights regarding its motion to dismiss.

4

*Reversed and remanded to vacate the final judgment against the management company.*

WARNER and DAMOORGIAN, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***